In a two-count indictment, Thomas Edward Gurley, was charged with unlawfully abducting Mildred Banks with intent to inflict physical injury upon her, or with intent to terrorize her in violation of § 13A-6-43, Code of Alabama 1975. The jury found the appellant "guilty of kidnapping in the first degree" and following a sentencing hearing at which four prior felonies were placed in evidence, the appellant was sentenced to life imprisonment without parole.
Mrs. Mildred Banks testified that on Wednesday, May 13, 1981, she was in her husband's radio and stereo store in Huntsville, Alabama, when the appellant entered the store and asked her to show him a stereo player. This was shortly after 2:00 o'clock in the afternoon. After showing the stereo the appellant left.
Approximately 15 or 20 minutes later, the appellant re-entered the store and came into the warehouse and asked to speak to Mrs. Banks. She stated that she arose to come around the desk when the appellant suddenly placed a large knife at her throat and stated "if you run or holler, I will kill you." He seized her and pulled her, twisted her arm behind her back, held her about the neck with a knife and told her to get her car keys from her purse. She stated that with one hand she reached into her purse and got the keys and that he then pulled her from the office and outside into the parking area. She stated that he had one hand around her neck near her nose and mouth and again told her "not to holler." She stated that as they reached the parking area she saw a man that she knew at the Sears ramp and waved her arms at him and suddenly pushed back against the appellant. She stated that there was loose gravel in the parking area and appellant's foot slipped enabling her to pull free. Mrs. Banks stated that she then ran to the Sears warehouse directly across from their place of business and telephoned the police. The following day she was shown a group of photographs by Huntsville Officer Bud Parker and immediately selected the photograph of the appellant. At trial she identified this photograph as State's Exhibit 7.
On cross-examination, she stated that she was not physically cut by the appellant but that he did "hurt her neck" from the way he pulled her and that she had soreness and a "real bad case of nerves." She stated that she did not know whether the police ever found the knife that appellant used or not.
Huntsville Police Officer James Parker identified a group of photographs which he showed Mrs. Banks at her home on the evening of May 14, 1981. He stated that Mrs. Banks immediately after looking through the group selected State's Exhibit 7, which was a photograph of appellant. He stated that he did nothing other than to hand her a group of photographs of white males from which the photograph of appellant was selected.
Huntsville Police Investigator Wayne Sharpe testified that on the morning of May 15, 1981, at approximately 9:20 a.m., he interrogated Thomas Edward Gurley at police headquarters shortly after breakfast. He stated that he first read the appellant a Miranda warning and that the appellant indicated he understood this and that he wished to talk with him. He stated that the appellant was in full charge of his faculties, understood his responses and spoke in a coherent manner. Mr. Sharpe then related the following of the appellant after the jury had first been excluded and Miranda predicate and voluntariness predicate first established. The appellant's statement is as follows: (R. 32-33)
 "Q All right, what else did he relate to you please, sir.
 "A He said that he had been smoking pot and got tired of walking and he decided to stop in the store and look around and he said that he went inside and looked at a stereo set and then left and went back to the railroad track and found a knife laying on the railroad track and decided to go back and get the lady's car. *Page 1307 
He said he took the knife and went back into the store and pulled the knife on the lady and forced her outside onto the parking lot and then got scared and ran. He said that he intended to take the lady with him, drop her off in Tennessee and drive her car on to Detroit, Michigan.
 "Q All right, sir what else did he say to you, if anything?
 "A He said that he didn't have any idea who the lady was but that he wasn't going to hurt her. He said, `I might rob some stores but murder ain't my bag.' And he said that he spent the night in the Colony Inn Motel, Room 231 and left the knife on the table in the motel room. Now, at that point I asked him to submit a written statement and he said, `It wouldn't do any good. I'm going to get the bitch act anyway but I ain't worried about it.'
"Q Did you go over to the Colony Inn, please, sir?
"A No, I didn't.
 "Q All right, do you know whether or not anyone else went over there to attempt to recover the knife?
"A Yes, sir.
"Q Did anybody find the knife in the motel room?
 "A Detective Crumrine and Sergeant Norment went to Room 231 but the room had already been cleaned up.
"Q And ya'll did not recover the knife, please, sir?
"A No."
On cross-examination by defense counsel, the officer stated that Gurley wanted the keys to the car as he planned to take Mrs. Banks to Tennessee and leave her out some place.
At the conclusion of the State's case, the appellant made a motion to exclude stating that the State had failed to prove the necessary elements of kidnapping.
 I
Appellant first asserts that the trial court erred in allowing Detective Wayne Sharpe to relate in narrative form appellant's statement to him, inasmuch as such statement contained "evidence of other offenses" and thus violated his constitutional rights.
It should be first here noted that the only objection made by counsel to the appellant's statement occurred after the Miranda
predicate and voluntariness predicate were first established outside the presence of the jury when counsel stated that he would like to "show an objection" which the trial court then asked what was the ground and counsel replied, "[T]hat he (appellant) did not intelligently and truly understand what was being asked," (Record 28-29) and therefore moved to suppress same. Since the voluntariness and the Miranda predicates were both properly established first outside the jury's presence, and approved by the trial judge and then related in the presence of the jury, at which time there was no objection, the issue of other offenses by the appellant is not properly before this court on appeal.
Moreover, we fail to see how the language "I am going to get the bitch act anyway, but I ain't worried about it," could be construed as a reference to other offenses of the appellant, and advanced by the State. Thus no error appears.
 II
The appellant next asserts that the trial court erred in overruling his motion to exclude the State's evidence asserting that there was no apprehension or harm proven and thus the State failed to prove the elements of kidnapping.
The revised Alabama statute on the subject of kidnapping is found in § 13A-6-43 Code of Alabama, 1975. This statute substantially broadens the former statutes, § 13-1-23 and § 13-1-24 Code of Alabama, as amended. Specifically, the appellant asserts that the State did not show a restraint, or an intent to harm or terrorize and therefore his motion to exclude was due to be granted.
It is quite clear under the Alabama cases that in order to prove the offense of kidnapping *Page 1308 
more is involved than the mere unlawful detention or seizure of the body of another. It is not a mere false imprisonment. There must be "an intent to secretly confine or imprison." See Ballv. State, 335 So.2d 230 (Ala.Cr.App. 1976) and Patzka v. State,348 So.2d 520 (Ala.Cr.App. 1977).
In the case at bar, Mrs. Banks' testimony clearly established that the appellant placed a knife at her throat, seized her physically and dragged her struggling from the office where she was employed to the parking lot. He further told her, with a knife at her throat, that he would kill her if she tried to scream or get away.
Moreover, the appellant's statement to Investigator Wayne Sharpe clearly established that the appellant intended to take Mrs. Banks in her automobile into the State of Tennessee and there leave her and flee. We are clear to the conclusion that the essential elements of kidnapping were here proven. Crews v.State, 374 So.2d 436 (Ala.Cr.App. 1979) and authorities therein cited. Thus the trial court properly overruled appellant's motion to exclude and submitted this case to the jury.
 III
At the close of the trial court's oral charge we find the following exception: (R. 51)
"THE COURT: State your exceptions, Gentlemen.
 "MR. WEAVER: The defendant objects to that portion of the Court's oral charge in defining abduct in that the Court failed to add after the victim's liberation the following by substantial removal, isolation, or concealment and/or the use of violence usually associated with the condition of kidnapping.
"THE COURT: Okay, denied. Tell them to commence."
In § 13A-6-40 (2) Code of Alabama, 1975, we find the following definition of the term "abduct", which is to be read in conjunction with our two kidnapping statutes, §§ 13A-6-43
and 13A-6-44. This section reads as follows:
 "(2) Abduct. To restrain a person with intent to prevent his liberation by either:
 "a. Secreting or holding him in a place where he is not likely to be found or
 "b. Using or threatening to use deadly physical force."
The trial judge in his oral charge, R. 47-48, properly covered this element as follows:
 "The term abduction means or abduct means to intentionally and knowingly restrict a person's movements unlawfully and without consent with intent to prevent that person's liberation by threatening to use physical force. Now an abduction of the victim with the requisite intent is sufficient to establish commission of the offense. It is not necessary that the criminal purpose actually be accomplished for the crime of kidnapping in the first degree to be committed. Deadly physical force as I have used that term, Ladies and Gentlemen, means the following. It means physical force which under the circumstances in which it is used is readily capable of causing death or serious physical injury and serious physical injury in that definition, Ladies and Gentlemen, means physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health, protracted loss or impairment of the function of any body organ.
 "To reiterate, abduction means to intentionally and knowingly restrict a person's movement unlawfully and without consent and with the intent to prevent his liberation by threatening to use deadly physical force. It is not necessary that the criminal purpose for which the abduction, if there was an abduction came about, actually be accomplished for the crime of kidnapping in the first degree to be committed."
The trial court gave full and proper instructions on the elements of kidnapping in the first and second degree. Thus no error appears.
 IV
Finally, the appellant asserts as error the trial court's sentencing of him as a habitual offender. *Page 1309 
It should be first here noted that the District Attorney gave notice immediately following the jury's verdict that the State would elect to proceed as a habitual offender. A separate sentencing hearing followed with counsel present at a subsequent date. At the sentencing hearing, the following four prior convictions were placed in evidence: (R. 71)
 "1. Buying, Receiving, Concealing Stolen Property — Date of Conviction: October 18, 1979
"2. Burglary to Auto
Date of Conviction: October 18, 1979
"3. Theft of Property
Date of Conviction: May 6, 1980
"4. Escape
Date of Conviction: May 6, 1980"
We are of the opinion that the trial court properly sentenced the appellant in this cause. No error appears.
We have carefully examined this record and find same to be free of error. This judgment is therefore affirmed.
AFFIRMED.
All the Judges concur.
 *Page 1