From a conviction for the offense of second degree kidnapping and a sentence of 30 years in the State penitentiary, this appeal follows. On appeal, appellant raises the following two issues: (1) Did the trial court erroneously deny the defense motion for judgment of acquittal based on the failure of the State to present a prima facie case? and, (2) Did the trial court err when it failed to instruct the jury on certain lesser included offenses? For the reasons outlined below, both issues are decided against the appellant and the conviction is due to be affirmed.
Appellant was arrested and indicted by the Colbert County Grand Jury for the offense of second-degree kidnapping, in violation of § 13A-6-44, Code of Alabama (1975). The State presented testimony from four witnesses, one of whom was the victim of the kidnapping. At the close of the State's case, a motion for judgment of acquittal was made by the defendant, and said motion was overruled by the court. After the jury returned a verdict finding the appellant guilty of the offense of second-degree kidnapping, appellant was sentenced to thirty years in the State penitentiary. On the day of sentencing, the appellant filed a motion for a new trial, which was denied by order of the trial court. Notice of appeal was given and this appeal followed.
The first witness called by the State was Al Blackburn, Sheffield Police Department. A little after 3 a.m. on the morning of July 13, 1984, the witness testified, he received a call concerning a black male subject. When he first arrived at the scene, the witness heard the sounds of footsteps on gravel and a "sliding, scuffling" noise. The witness then observed the black male subject (who was later identified as the appellant), as well as a female subject. The witness identified himself as a police officer and told the subject to halt. According to the witness, the appellant "turned, stumbled and ran," while the female who was with him "stood still. She did not attempt to run." According to the witness, the female appeared to be "disturbed." The witness gave chase and apprehended and arrested the appellant. The witness estimated that the distance from the edge of the street to the point where he apprehended the appellant and the female was approximately 100 yards. Additionally, the witness testified that this area was "grown up with bushes and trees" and was a secluded "wooded area." On cross-examination, the witness stated that he did not see a struggle between the two individuals nor did he overhear any conversation between the two.
The victim testified that in the early morning hours of July 13, 1984, she went to the Zippy Mart on Second Avenue in Sheffield, Alabama, to use the telephone. As she was walking, she noticed that someone was walking behind her so she "speeded up, you know, trying to avoid him." In order to avoid the person who was following her, the victim cut across a corner. *Page 1340 
When she glanced back over her shoulder, however, she realized that the black male who was following her also took this short cut and was "moving pretty fast." The victim identified the appellant as her pursuer. Although she had never seen the appellant before, he called out to the victim and asked her her name. As she continued walking, the victim testified, the following occurred:
 ". . . And then he got up right next to me, and he told me that I was going to do what he wanted me to do, and then, ah, he started, he put his arm around my waist and started kinda like pushing me behind, you know, down beside Carter Oil. Then before I had time to do anything, he put his hand over my mouth and under my nose, and kept repeating that I was going to do what he wanted me to do, and I would do what he said."
The victim testified that she was frightened and "scared" and was afraid that she would be raped, since the appellant continued to tell her that she would have to "do what he said." The appellant pushed her down an alley and, at one point, lifted her off the ground. According to the victim, the appellant forced her toward a storage building located behind Carter Oil. During this time, the victim begged and pleaded with the appellant asked him repeatedly not to hurt her. She said that when the police officer arrived, the appellant "pushed me a little bit, sorta toward the cop and then he turned and slipped and started running, and the police officer turned and went after him." The victim testified that the appellant did not release her until the police officer appeared on the scene.
The witness stated that she was scared during the entire time the appellant pursued her, and after the police officer arrived and gave chase, the witness stated, she began to cry and holler for help. After a woman stopped and took her to the Zippy Mart, the witness recognized the appellant who was being placed in the back of a police car. The witness stated that when she talked to the police, she was "hysterical". She also stated that she "didn't know what was going on. I was scared to death."
On cross-examination, the witness stated that the appellant did not have a knife or a gun nor did he threaten to use a weapon on her. The witness stated that she was "upset" and thought that he was going to rape her, since he kept repeating that she would have to do "exactly what he wanted me to do." The witness stated that she did not go back behind the building of her own free will. Instead, she was forced by the appellant who had his arm around her and pushed her. Additionally, the witness testified that she was scared.
On behalf of the State, Mike Poague, City of Sheffield Police Department, testified that on the morning of July 13, in the early morning hours, he received a call concerning a black male subject. When he arrived on the scene, he heard Officer Blackburn over the walkie-talkie stating that he was pursuing someone on foot. The witness placed himself in position to apprehend the subject (who was identified as the appellant) and then observed Officer Blackburn on top of the appellant attempting to handcuff him. The witness assisted Officer Blackburn in cuffing the appellant. The witness testified that when he observed the victim, she was "very hysterical, crying, trembling." When the witness attempted to talk to the victim, she "jumped from the driver's side [of the patrol car] back all the way to the passenger side and balled up into a ball and was screaming and crying. Very nervous, would hardly talk to me." When the victim saw the appellant she became "very hysterical, scared to death. She was more worried about him than she was anything else. She wouldn't hardly talk to anybody." On cross-examination, the witness stated that, to his knowledge, no weapons were discovered.
On behalf of the State, Doug Aycock, Sheffield Police Department, Captain of Detectives, testified that he had made certain measurements of the subject location. According to the witness, the distance from the street to the back of the storage area *Page 1341 
where the appellant had taken the victim was approximately 60 yards.
After the State rested, the defense made a motion for judgment of acquittal, which was overruled by the trial court. After closing arguments were made to the jury, the trial court instructed the jury on the appropriate law to apply to the facts of the case. The Court instructed the jury not only on the elements of the offense of kidnapping in the second degree, but also on the elements of the offense of unlawful imprisonment in the second degree. Although defense counsel objected to the Court's failure to give certain of the defendant's requested charges, there was no ruling on the objection and the Court merely replied "Thank you." When the jury returned, the appellant was found guilty of the offense of kidnapping in the second degree. After a sentencing hearing, the appellant was sentenced to 30 years in the State penitentiary and this appeal followed.
 I
The first argument submitted by the appellant is that the trial court erred when it failed to grant the defense motion for a judgment of acquittal at the close of the State's evidence for failure to present a prima facie case of second-degree kidnapping. In particular, the appellant asserts that there was no proof that the victim had been "abducted." Under Alabama law, a person commits the crime of kidnapping in the second degree if he abducts another person. § 13A-6-44 (a),Code of Alabama (1975). The term "abduct" is defined in §13A-6-40 (2), Code of Alabama (1975), as follows:
 "To restrain a person with intent to prevent his liberation by either:
 (a) Secreting or holding him in a place where he is not likely to be found, or
 (b) Using or threatening to use deadly physical force."
The term "restrain" is defined in § 13A-6-40 (1), Code ofAlabama (1975), as follows:
 "To intentionally or knowingly restrict a person's movements unlawfully and without consent, so as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he had been moved. Restraint is `without consent' if it is accomplished by:
a. Physical force, intimidation or deception. . . ."
As the comments which follow these code sections note, "abduction" is a serious form of restraint and requires an "intent to prevent the victim's liberation, by substantial removal, isolation or concealment and/or the use of violence usually associated with traditional kidnapping." § 13A-6-40, Commentary, Code of Alabama (1975). Appellant contends that, at the very most, the State's evidence merely established that the victim was "restrained" but did not establish the element of "abduction," since there was no "evidence that the appellant used or threatened to use deadly force."
Contrary to the appellant's position, however, not only was there evidence presented by the State to prove that the appellant "restrained" the victim, but there was also evidence presented that the victim was "abducted."
In order to prove the elements of the offense of kidnapping, the State must show more than the mere unlawful detention or seizing another; there must be an intent to "secretly confine or imprison" the victim. Gurley v. State, 411 So.2d 1305, 1308
(Ala.Cr.App. 1982). The evidence showed that the appellant's restraint of the victim was "with intent to prevent [the victim's] liberation," since the appellant was "secreting or holding [the victim] in a place where [she] is not likely to be found." This was established by the following factors: (1) The evidence showed that the victim attempted to run from the appellant, but he chased her; (2) when the appellant overtook the victim, he placed one hand over her mouth and another hand around her waist; (3) the appellant then began to push her and forced her to move toward a secluded area; (4) the victim was frightened, afraid, and feared that she would be *Page 1342 
raped; (5) repeatedly, the appellant told the victim that she would have to do "what he wanted her to do"; (6) the victim begged and pleaded that appellant not hurt her; (7) when the police officer arrived on the scene, he heard the sound of "scuffling, sliding" footsteps on gravel; (8) when the police officer identified himself, the appellant turned and ran and had to be subdued in order to be taken into custody; (9) witnesses who observed the victim immediately after the events in question testified that she was hysterical, very upset, crying, and afraid of the appellant; (10) the victim testified that she did not go behind the building of her own free will; and (11) the events took place during the early morning hours and the appellant forced the victim toward a secluded, wooded area away from the road and the public.
Appellant's argument is evidently an attempt to assert that the provisions of § 13A-6-44 (b), Code of Alabama (1975),*
would apply to the facts that in this case. Since there was no evidence of a weapon, appellant argues that there was no intent to "use or to threaten to use deadly force." The provisions of this statute, however, are available as an affirmative defense only in those instances where all three criteria of that subsection are met. Here it is obvious that the appellant was not a "relative" of the victim and thus this defense would not apply. For the reasons stated above, the State presented a prima facie case which supports the conviction of second-degree kidnapping.
 II
The second issue raised by the appellant on appeal concerns the alleged error committed by the trial court when it failed to give the jury certain requested instructions on the "lesser" offenses of criminal coercion, menacing, assault, and attempt. Although the trial court instructed the jury on the lesser included offense of unlawful imprisonment, the appellant argues that "at the very least," the facts of the case would have supported charges on these additional offenses. Counsel, however, failed to preserve this issue for appellate review since, in response to the defense counsel's objection to the charges, the Court merely stated, "Thank you." Since defense counsel failed to obtain a ruling from the trial court on this issue, there is nothing for this Court to review. Gross v.State, 395 So.2d 485, 488 (Ala.Cr.App. 1981); Ragsdale v.State, 448 So.2d 442, 444 (Ala.Cr.App. 1984).
Additionally, in general, "an accused is entitled to have the jury charged on a lesser included offense only when there is a reasonable theory of the evidence to support the charge." Myersv. State, 401 So.2d 288, 291 (Ala.Cr.App. 1981). In this case, however, the evidence would not have supported charges on these offenses under any "reasonable theory" and thus the trial court properly concluded that they should not be a part of the oral charge.
For the reasons outlined above, it is apparent that the State presented a prima facie case of second-degree kidnapping and the error, if any, as to the failure to give certain requested jury charges, was not preserved for appellate review. For this reason, the decision of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.
* The defense afforded by § 13A-6-44 (b) to a charge of second-degree kidnapping applies only where the abduction is for the purpose of assuming lawful control over the person, there is no "deadly force" involved, and the actor is a "relative of the person abducted." *Page 1343