The appellant, Larry Wayne Guess, was charged by separate indictments with having committed the offenses of robbery in the first degree, assault in the first degree, and kidnapping in the first degree, as proscribed by §§ 13A-8-41(a)(1), -6-20(a)(1), and -6-43(a)(4), Code of Alabama 1975, respectively. After a trial on the consolidated charges, Guess was found guilty of assault in the first degree and kidnapping in the first degree; he was acquitted of the charge of robbery in the first degree. In accordance with §§ 13A-5-6(a)(4) and (5), respectively, Guess was sentenced for his kidnapping conviction to a term of thirty years' imprisonment and for his assault conviction to a term of fifteen years' imprisonment, with the sentences to run concurrently. The trial court further ordered Guess to pay one hundred dollars as crime victim assessment and $7,689.50 as restitution.
We have thoroughly reviewed Guess's assertions for reversal, including his contention of ineffective trial counsel, which has been presented to us in two pro se letters, and we find that only two issues warrant discussion in this formal opinion.
 I
Guess raises the question of sufficiency of the evidence presented by the prosecution to establish a prima facie case of the charge of kidnapping in the first degree. Prior to Guess's motion for judgment of acquittal, the prosecution presented the following facts: *Page 547 
Between 11:00 p.m. and midnight on November 27, 1984, Charles Foshee received a phone call from Guess, who told him that his car had run out of gasoline and asked him to pick him up. Guess and Foshee lived in the same trailer park and each had done favors for the other. Foshee agreed and met Guess, but he did not see Guess's car anywhere. Guess got into Foshee's car and asked Foshee if he would drive him to the top of the mountain to see a friend. Foshee agreed and proceeded on Highway 117 up the mountain. During conversation between the two men, Guess mentioned that his father was mad at him and would be even madder the following day.
Foshee had driven several miles on Highway 117 when Guess directed him to turn onto a paved county road. After Foshee had driven about half a mile down this road, Guess directed him to turn onto a gravel road. Shortly thereafter, Guess asked Foshee to stop so he could urinate. Foshee obliged and waited in the idling car. When Guess returned, he pointed a gun at Foshee's head and told him to place his hands on the dash and to not move or he would be killed. When Foshee asked what this was about, Guess mentioned that he had to have some money to leave town. Guess then ordered Foshee to slowly slide out of the car and put his hands behind his back. Foshee complied, Guess handcuffed him, and then Guess forced him to lie across the front seat. Guess tried to blindfold the victim, but he could not get the blindfold tied. At this point, Guess ordered Foshee to lie with his feet on the driver's side of the floorboard and his head on the passenger's side of the front seat. When Foshee told Guess that he had approximately nine hundred dollars in his wallet and would give it to him, Guess struck Foshee with a hard object on the left side of his head and across his nose. Foshee was struck several more times until he lost consciousness.
When Foshee regained consciousness, he was still in his car, but the car had been moved to Highway 117 and it was resting on a bluff twenty-five to thirty feet from the highway. If one of the car's wheels had not become tangled in kudzu, the car would have tumbled down two more feet where boulders were dumped and then to the bottom. The handcuffs had been removed, so when Foshee regained consciousness he was able to get out of his car and walk to a Mr. Carr's house. Carr took Foshee to the county hospital at approximately 4:00 a.m., where he was treated and admitted and where he remained for four or five days.
Guess was arrested on December 1 in Monteagle, Tennessee. After his arrest, Guess made a statement wherein he claimed to have been at Dave's Dairy Bar at about 11:00 p.m. on the night of the incident, at Swifty Mart about midnight, and thereafter in Scottsboro.
At trial, Officer York testified that Guess's fifteen-year-old son had borrowed a set of handcuffs from him on the day prior to the incident and the set had not been returned.
Guess was charged under § 13A-6-43(a)(4), which states that "[a] person commits the crime of kidnapping in the first degree if he abducts another person with intent to . . . [i]nflict physical injury upon him. . . ." The definition of "abduct," as defined by § 13A-6-40(2), is as follows:
 "To restrain a person with intent to prevent his liberation by either:
 "a. Secreting or holding him in a place where he is not likely to be found, or
 "b. Using or threatening to use deadly physical force."
Guess concedes that the prosecution proved the elements of restraint, as defined by § 13A-6-40(1), and the use of deadly physical force. However, he argues that the prosecution failed to prove that he restrained Foshee "with intent to prevent his liberation." In anticipation that the attorney general would counter-argue that the requisite intent is manifested by Guess's acts of handcuffing and beating Foshee, Guess cites the following for his contention that the intent required to be proven is more than that set forth in the statute:
 "It is quite clear under the Alabama cases that in order to prove the offense *Page 548 
of kidnapping more is involved than the mere unlawful detention or seizure of the body of another. It is not a mere false imprisonment. There must be 'an intent to secretly confine or imprison.' See Ball v. State, 335 So.2d 230
(Ala.Cr.App. 1976) and Patzka v. State, 348 So.2d 520 (Ala.Cr.App. 1977)."
Gurley v. State, 411 So.2d 1305, 1307-08 (Ala.Cr.App. 1982).Accord Seay v. State, 479 So.2d 1338, 1341 (Ala.Cr.App.), cert.denied, 479 So.2d 1343 (Ala. 1985). The Gurley court's addition of a specific intent not required by § 13A-6-40(2) — an intent to secretly confine or imprison — is highly questionable, for the authorities upon which the Gurley court relies are two cases governed by the old kidnapping statute, Code 1940, T. 14, § 6, which specifically required a showing of "intent to cause [the victim] to be secretly confined, or imprisoned against his will, or to be sent out of the state against his will. . . ." This additional requirement of proof has no application to the instant statute, since the legislature clearly abandoned it and broadened the former statutes as evidenced by the Commentary to §§ 13A-6-43 and -44. See also Owens v. State, [Ms. 4 Div. 536, February 12, 1986] (Ala.Cr.App. 1986); Gurley, 411 So.2d 1307.
"Pursuant to the new kidnapping statute, the State must prove two intents: The first deriving from the abduction element and the second from the statutory subdivisions of §13A-6-43(a)(1)-(6)." Owens. Thus, in the instant case, the prosecution had to prove that Guess restrained Foshee with "intent to prevent his liberation" and with "intent to . . . [i]nflict physical injury upon him." Both of these elements were clearly established by the evidence. Accordingly, Guess's motion for judgment of acquittal was properly denied.
 II
The second issue is framed by Guess, as follows:
 "In the absence of a jury finding that the defendant used or attempted to use a firearm or deadly weapon in committing a Class A felony and a Class B felony, the trial court erred in sentencing the defendant under the 'Firearm Enhancement' sentencing statute."
The statutory provisions to which Guess is referring are §§13A-5-6(a)(4) and (5), which mandate the following punishment:
 "(4) For a Class A felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, not less than 20 years.
 (5) For a Class B or C felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, not less than 10 years."
In support of his argument, Guess relies upon the opinion expressed by the Supreme Court of Florida in State v. Overfelt,457 So.2d 1385 (Fla. 1984). There, the court, upon reviewing the district court's holding on the question of whether there must be a specific jury finding that an accused actually possessed a firearm before the trial court can apply the enhancement and mandatory sentencing provisions of § 775.087, Florida Statutes (1983), made the following observations:
 "The district court held, and we agree, 'that before a trial court may enhance a defendant's sentence or apply the mandatory minimum sentence for use of a firearm, the jury must make a finding that the defendant committed the crime while using a firearm either by finding him guilty of a crime which involves a firearm or by answering a specific question of a specific verdict form so indicating.' 434 So.2d [945] at 948. . . . The question of whether an accused actually possessed a firearm while committing a felony is a factual matter properly decided by the jury. Although a trial judge may make certain findings on matters not associated with the criminal episode when rendering a sentence, it is the jury's function to be the finder of fact with regard to matters concerning the criminal episode. To allow a judge to find that an accused actually possessed a firearm when committing a felony in order to apply the enhancement or mandatory sentencing provisions of section 775.087 *Page 549 
would be an invasion of the jury's historical function and could lead to a miscarriage of justice in cases such as this where the defendant was charged with but not convicted of a crime involving a firearm."
457 So.2d at 1387.
However, we find this ruling of Overfelt unpersuasive, especially in light of the recent ruling of the United States Supreme Court in McMillan v. Pennsylvania, ___ U.S. ___,106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), wherein the Court reviewed Pennsylvania's Mandatory Minimum Sentencing Act, 42 Pa.Cons.Stat. § 9712 (1982), which is similar to Alabama's statute, against the claim that the Act denied the petitioners their Sixth Amendment right to a trial by jury. The Court first noted that the Pennsylvania Legislature made visible possession of a firearm a factor to be considered in sentencing, that factor thus becoming pertinent only after the defendant has been convicted; that the section neither alters the maximum penalty nor creates a separate offense mandating a separate penalty; and that the section's sole operation is to limit the sentencing court's discretion by setting a minimum sentence upon a finding of visible possession of a firearm. Upon these observations, the Court held that the factor of visible possession of a firearm may be treated as a sentencing consideration rather than as an element of a particular offense. The Court then further stated the following:
 "In light of the foregoing, petitioners' final claim — that the Act denies them their Sixth Amendment right to a trial by jury — merits little discussion. Petitioners again argue that the jury must determine all ultimate facts concerning the offense committed. Having concluded that Pennsylvania may properly treat visible possession as a sentencing consideration and not an element of any offense, we need only note that there is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact. See Spaziano v. Florida, 468 U.S. [447], at ___, 104 S.Ct. [3154], at ___ [82 L.Ed.2d 340] [1984]." ___ U.S. ___, 106 S.Ct. at 2420.
Further, regarding the Overfelt decision, we note that the procedure required by the pertinent Florida statute, § 775.087, as opposed to that required by our statute, is crucially distinguishing. Section 775.087 authorizes the reclassification
of the degree of a felony upon a finding that the defendant in committing the felony carries, displays, uses, threatens, or attempts to use any weapon or firearm. For example, upon such a finding, a first degree felony is reclassified as a life felony; a second degree felony is reclassified as a first degree felony; and so on. Thus, it appears that the possession of a firearm is, in reality, an element of the crime for which the defendant is convicted. On the other hand, the Alabama statute, like the Pennsylvania statute in McMillan, in no way affects the offense for which the defendant is adjudicated guilty; it does not alter the degree of guilt as to the crimes to which it may be applied. Rather, it merely mandates a minimum sentence and applies only in the event the accused is convicted of one of the offenses specified. The Alabama statute is pertinent only to the sentencing proceedings.
In Darby v. State, [Ms. 8 Div. 181, October 22, 1985] (Ala.Cr.App. 1985), the appellant contended that the trial court, in determining which subsection of § 20-2-80(2) applied to the appellant's conviction of trafficking in cocaine, and, thus, defined the minimum sentence and fine, improperly invaded the province of the jury by making an independent finding of fact of the amount of cocaine possessed. In resolving this issue, the court stated the following:
 "The appellant is correct in his assertion that in every conviction for trafficking in cocaine there must be a finding as to the minimum quantity of cocaine possessed by the accused. Such a finding is a prerequisite to sentencing, since the trial judge must know the amount of cocaine possessed by the accused before he is able to determine which minimum *Page 550 
sentencing provisions of § 20-2-80(2), Code of Alabama 1975, applies. The question to be resolved then, is whether the minimum amount of cocaine possessed by an accused is a matter to be decided by a jury, or, whether it is a matter within the dominion of the trial court pursuant to its sentencing authority.
 "Historically, it has been the function of the jury to determine those issues of fact which bear upon the guilt or innocence of the accused. Fuller v. State, 43 Ala. App. 632, 198 So.2d 625
(1966). A person is guilty of the offense of trafficking in cocaine when he is found to have knowingly been in possession of 28 grams or more of cocaine. § 20-2-80(2), Code of Alabama 1975. For the offense of trafficking, whether the defendant is in possession of 28.1 grams or 1,000 grams has no bearing upon the guilt. Determining the exact amount of cocaine in excess of 28 grams that the defendant possessed is only relevant to determine the proper sentence to be imposed.
 "It is undisputed that the trial judge has the authority to make certain findings of fact to effectuate proper sentencing of a defendant. In Hosey v. State, 344 So.2d 1230, 1233 (Ala.Cr.App.), cert. denied, 344 So.2d 1235 (1977), this court stated, 'The range of outside matters entitled to consideration by the trial judge in fixing punishment is extremely broad.' Rule 6(b)(2), Ala.Temp. Rules of Criminal Procedure, gives the trial judge the authority to make findings of fact at the sentencing hearing:
 " 'Disputed facts shall be determined by the preponderance of evidence. Evidence may be presented by both the state and the defendant as to any matter that the court deems probative on the issue of sentence. Such matters may include, but are not limited to, the nature and circumstances of the offense, the defendant's character, background, mental and physical condition and history, the gain derived by the defendant or loss suffered by the victim as a result of defendant's commission of the offense, and any other facts in aggravation or mitigation of the penalty. Any evidence that the court deems to have probative value may be received, regardless of its admissibility under the rules of evidence. The presentence report, if submitted, shall be considered as part of the evidence.' (Emphasis supplied.)
 ". . . Rule 6(b)(2), A.Temp.R.Crim.P., permits the trial judge to make such a finding pursuant to his power to determine 'any matter that the court deems probative on the issue of sentence.' We find, therefore, that the trial court's determination of the precise quantity of cocaine possessed by the appellant, when used solely for purposes of determining the appropriate sentence range, was correct and allowable and did not deny the appellant this right to trial by jury."
We find that Guess was not denied his constitutional right to a trial by jury to determine the application of §§13A-5-6(a)(4) and (5). Just as the exact amount of cocaine possessed is not an element of the offense of trafficking in cocaine, the use or attempted use of a firearm in the commission of the felony is not an element of the crime. "The right to a trial by jury does not attach where: 'The determination to be made will at most have bearing on the duration of the confinement, a question which has traditionally been committed to the discretion of the sentencing court.' "Commonwealth v. Anderson, 345 Pa. Super. 407, 411, 498 A.2d 887,889 (1985) (quoting Commonwealth v. Wright, 508 Pa. 25, 41,494 A.2d 354, 362 (1985) aff'd, sub nom. McMillan v. Pennsylvania,supra). See also State v. Mullins, 223 Kan. 798, 577 P.2d 51
(1978).
Accordingly, this cause is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur. *Page 551