Jim Goff was charged by indictment with kidnapping in the first degree, in violation of § 13A-6-43, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment," and the trial judge sentenced him to life imprisonment without possibility of parole, as a habitual felony offender.
 I
The appellant contends, in the first two issues raised in his brief, that the State failed to prove a prima facie case and that the trial court erred by refusing to grant his motion for judgment of acquittal at the close of the State's case-in-chief. Since these issues are, for all intents and purposes, one and the same, they will be addressed jointly in this portion of our opinion.
When a trial judge rules on a motion for judgment of acquittal, his decision, and ultimately our review of that decision, must be based on the evidence before him at the time.McCord v. State, 501 So.2d 520, 525 (Ala.Cr.App. 1986), cert.denied (Ala. 1987). Since the motion for judgment of acquittal was made after the State rested its case, the correctness of the decision must be measured based on the evidence as presented by the State. Thereafter, we must determine if there was sufficient legal evidence for the jury, "by fair inference," to find the appellant guilty beyond a reasonable doubt.
Section 13A-6-43 describes kidnapping in the first degree, in relevant part, as follows:
 "(a) A person commits the crime of kidnapping in the first degree if he abducts another person with intent to
". . .
 "(4) Inflict physical injury on him, or to violate or abuse him sexually. . . ."
(Emphasis added.)
The appellant's challenge to the sufficiency of the evidence at trial was based on his argument that the State failed to prove that the appellant abducted the appellant, as that term is defined in our criminal code. Section 13A-6-40(2) defines "abduct," in relevant part, as follows:
 "To restrain a person with intent to prevent his liberation by . . .
 "a. Secreting or holding him in a place where he is not likely to be found. . . ."
(Emphasis added.) The term "restrain" is defined at §13A-6-40(1) as follows:
 "To intentionally or knowingly restrict a person's movements unlawfully and without consent, so as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved. Restraint is 'without consent' if it is accomplished by:
 "a. Physical force, intimidation or deception, or *Page 1285 
 "b. Any means, including acquiescence of the victim, if he is a child less than 16 years old
or an incompetent person and the parent, guardian or other person or institution having lawful control or custody of him has not acquiesced in the movement or confinement."
(Emphasis added.)
The evidence as presented by the State revealed that A.L.C., the five-year-old abductee in this case, was at her uncle's house in Dothan, Alabama, on July 23, 1989, playing with her sisters and cousins. While she was at her uncle's house, the appellant stopped by.
The appellant allegedly told A.L.C. that he would give her a dollar if she would get him a bucket of water. She did as he asked, and the appellant gave her a dollar and poured the water in the radiator of his automobile.
Sometime during the day, the uncle left his house to pick up his wife. While he was gone, the appellant told A.L.C. that he would buy her a Snickers candy bar. He opened his car door, and A.L.C. got in. A.L.C. testified that they went to a store, that the appellant got out of the car and went into the store, and that he returned after a few minutes and told her that the store did not have Snickers bars.
From the store, the appellant drove to a Hardee's Restaurant. He again got out of his car, he went inside, and returned with a Coke and some french fries, which he gave to A.L.C. A.L.C. stated that all during this time she had been on the floorboard. Supposedly, the appellant pointed out a police car to her, said he was afraid of the police, and told her to get on the floorboard of the car.
From Hardee's, the appellant drove to the camper trailer, in which he was living at the time in Headland, Alabama. The appellant opened the car door for A.L.C., and she got out. He then opened the door to his trailer, and they both went inside.
A.L.C. stated that she had never been to his trailer before, and she stated that she could not get away. A.L.C. testified that once inside the trailer, the appellant removed her clothes and put her on the bed. He then took off his shirt, unzipped his pants, and took out his private part. She testified that it was hard and that he made her put her mouth on it. During this incident, the appellant allegedly struck A.L.C. in the mouth. He also tried to stick his finger in her vagina. She said that she was going to tell her "momma" and kicked the appellant in the chin.
A.L.C. also stated that someone knocked on the door. She said that the appellant made her hide under the kitchen table. She said that when the appellant opened the door, Sgt. Jackie Mendheim, with the Dothan Police Department, got her and took her to the hospital.
A.L.C.'s 10-year-old cousin, S.T., also testified. S.T. stated that she was playing on the railroad tracks by A.L.C's uncle's house on July 23, 1989, when she saw A.L.C. leave with the appellant in his car.
Dr. James Bellone examined A.L.C. in the emergency room at Southeast Alabama Medical Center in Dothan, Alabama. He testified that she had a bruised lip and two fresh lacerations to the vaginal area.
Officer Lynwood Stokes, Jr., with the Headland Police Department, also testified for the State. He testified that on July 23, 1989, he met Sgt. Mendheim at the Headland Police Department and that the two of them went to the appellant's trailer. Officer Stokes said that Sgt. Mendheim knocked on the appellant's door and said, "Police officer. Open the door." (R. 134.) After a short pause, he said he heard someone inside the trailer respond, "Police? What for?" (R. 135.) According to Stokes, Sgt. Mendheim announced that he was a Dothan police officer, and the appellant opened the door.
He testified that the appellant had on a pair of brown pants with a belt, which was hanging lose, and that the zipper was open on his pants. Stokes said that Mendheim asked the appellant where the girl was, to *Page 1286 
which the appellant responded, "What little girl? There is nobody here but me." (R. 136.) Stokes stated that immediately thereafter he heard another voice inside the trailer say, "I'm naked." (R. 136.) He saw a young black female stick her head out from underneath the kitchen table. The appellant was arrested at that time, and A.L.C. was taken to a hospital.
Based on this evidence, it seems overwhelmingly clear to us that the appellant "abducted" A.L.C. with the intent to "[i]nflict physical injury upon [her], or to violate or abuse [her] sexually." § 13A-6-43(a)(4). He took a child who was under 16 years of age without the permission of the child's parent or guardian. He had her get on the floorboard so that she could not be seen. These factors sufficiently satisfy the definitions of "abduct" and "restrain," as set out above. §13A-6-40(1) and (2).
The State proved the two necessary intents in a kidnapping case: (1) the "intent" to abduct; and (2) the "intent," in the context of this case, to violate or abuse the victim sexually.See Guess v. State, 507 So.2d 546, 548 (Ala.Cr.App. 1986),aff'd, 507 So.2d 551 (Ala. 1987). In Musgrove v. State,519 So.2d 565, 581 (Ala.Cr.App.), aff'd, 519 So.2d 586 (Ala. 1986),cert. denied, 486 U.S. 1036, 108 S.Ct. 2024, 100 L.Ed.2d 611
(Ala. 1988), we held that the appellant could be found guilty of kidnapping in the first degree, even where the victim entered the appellant's motel room voluntarily and was not held against her will until she entered the room. See Ala. Code, 1975, § 13A-6-40 commentary.
The cause sub judice presents an even more compelling case: the appellant lured an innocent child into his automobile, convinced her to get on the floorboard so as not to be seen, and then took her to his trailer (a place that she had never been before). In fact, A.L.C. testified that once the appellant closed the door to the trailer she could not get away. See Seayv. State, 479 So.2d 1338, 1341 (Ala.Cr.App.), cert. denied,479 So.2d 1343 (Ala. 1985) (discussing "abduct" in context of second degree kidnapping).
Thus, the trial judge's denial of the appellant's motion was not error. Likewise, we hold that the evidence is ample to support the verdict. Thus, the appellant is not entitled to a reversal on this claim.
 II
The appellant argues that the trial judge committed reversible error by refusing to give his written requested charges on unlawful imprisonment in the first degree, unlawful imprisonment in the second degree, and enticing a child to enter his vehicle or home for immoral purposes. He argues that all of these are lesser-included offenses of kidnapping, that the facts supported a possible finding of guilt as to these crimes, and that he was entitled as a matter of law to have the jury instructed on these offenses.
An accused is entitled to have charges given which reasonably support his theory of the case. Giles v. State, 366 So.2d 351,352 (Ala.Cr.App. 1978). These written requested charges must, however, comply with the appellate decisions of this State. As the State points out, the appellant's requested charge on enticing a child was properly refused, because it contained a misspelled word ("lascinious," rather than "lascivious" as used in the statute, § 13A-6-69, Code of Alabama 1975). See Ex parteWilhite, 485 So.2d 787, 789 (Ala. 1986).
The appellant further contends that the trial court should have instructed the jury on the lesser-included offenses of first and second degree unlawful imprisonment. §§ 13A-6-41 and -42. We acknowledge that unlawful imprisonment is a lesser-included offense of kidnapping. The commentary of §§13A-6-41 and -42 states as follows:
 "The offense of 'unlawful imprisonment' covers all mild cases of unlawful restraint that do not fall within the scope *Page 1287 
of 'kidnapping.' §§ 13A-6-43 and 13A-6-44."
(Emphasis added.) See Seay, 479 So.2d at 1342 (trial court instructed jury on "lesser included offense of unlawful imprisonment" in kidnapping case).
We believe that, for the purpose of our analysis, Davis v.State, 470 So.2d 1340 (Ala.Cr.App. 1985), is indistinguishable from the cause sub judice. In Davis, the appellant was found guilty of kidnapping in the second degree and assault in the second degree. He argued on appeal that the trial court erred by refusing to charge the jury on the lesser-included offense of unlawful imprisonment in the first degree. We disagreed with the appellant in Davis and, in affirming his conviction, stated as follows:
 "The events we have recited could hardly be considered mere restraint, as required for an unlawful imprisonment, but rather, if anything, constituted an abduction. Therefore, the court did not have a 'rational basis' to instruct the jury on this lesser offense. Wyllie v. State, 445 So.2d 958 (Ala.Cr.App. 1984)."
Davis, 470 So.2d at 1342.
The cause sub judice, in this regard, is indistinguishable from Davis. As we held in part I of this opinion, the jury's verdict was based on sufficient evidence of an "abduction." To go one step farther, we do not believe that taking a five-year-old child to one's home for the purposes of sexually molesting or abusing that child is at the level of "mere restraint"; rather, it rises to the level of "abduction" as required by our kidnapping statute. This is not one of those "mild cases" referred to in the commentary following §13A-6-42. Thus, there was no "rational basis" or "reasonable theory" to support a jury charge on unlawful imprisonment in this case. The trial judge's refusal to give the appellant's requested jury charges was correct under the evidence presented.
For the reasons stated herein, the judgment of the trial court is due to be, and the same is hereby, affirmed.
AFFIRMED.
All the Judges concur.
BOWEN, J., concurs specially with opinion.