UNITED STATES, Appellee,

v.

Carl A. JEFFRESS, Specialist, U.S.
Army, Appellant.

No. 61,059.
CM 8800290.

U.S. Court of Military Appeals.

Aug. 29, 1989.

**410**

For Appellant: *Captain Harry C. Wallace, Jr.* (argued); *Colonel John T. Edwards, Lieutenant Colonel Russell S. Estey, Captain Brian D. Bailey* (on brief); *Captain James E. O'Hare.*

For Appellee: *Captain Jonathan F. Potter* (argued); *Major Daniel J. Dell'Orto* and *Major Gary L. Hausken* (on brief); *Captain Rubard D. Rubino.*

*Opinion of the Court*

EVERETT, Chief Judge:

Pursuant to appellant's pleas, a military judge sitting as a general court-martial at Camp Casey, Korea, found him guilty of forcible sodomy, kidnapping, and false swearing, in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 USC §§ 925 and 934, respectively. The sentence adjudged—dishonorable discharge, confinement for 8 years, total forfeitures, and reduction to Private E–1—

was approved by the convening authority; but pursuant to a pretrial agreement, he suspended confinement in excess of 4 years with a provision for automatic remission.

The Court of Military Review affirmed the findings and sentence. 26 MJ 972 (ACMR 1988). We granted appellant's petition for review in order to consider this issue:

WHETHER APPELLANT'S PLEA OF GUILTY TO KIDNAPPING IS PROVIDENT IN LIGHT OF THE FACT THAT APPELLANT MOVED THE VICTIM AN INCONSEQUENTIAL DISTANCE AND DETAINED HER ONLY LONG ENOUGH TO COMPLETE ANOTHER CHARGED OFFENSE.

**A**

According to appellant's testimony and a stipulation of fact, he had been wandering through the streets of a Korean city on Halloween night 1987 "along with the many soldiers revelling in the coming of this holiday." A female soldier, Private Tracy Henneous, was walking alone; and, although he had never seen her before, he followed her and waited outside when she went inside a club.

When she came back out, he grabbed her and, despite her struggling, "[p]ulled her around behind the side of the building," *i.e.*, "some 15 feet to a location outside the normal route of pedestrians—an open field without any sidewalks, paths, lights, stores, shops, or amusements." After dragging his victim "back into further darkness," Jeffress "straddled her, by sitting on her chest, and unzipped his pants." He then forced her to engage in fellatio with him; and "[a]fter satisfying himself," he departed.

**B**

Appellant now claims that the facts to which he testified and stipulated are inconsistent with his plea of guilty to kidnapping and that this plea was improvident. In this connection, he relies on the statement in the Manual for Courts–Martial, United

States, 1984, that, to constitute kidnapping, "[t]he holding must be more than a momentary or incidental detention." Para. 92c(2), Part IV.

In his thoughtful opinion in the court below, Senior Judge DeFord concluded that, in the 1984 Manual, "the President ostensibly changed military law regarding the offense of kidnapping" and that, "[a]s appealing as this change may be, such a substantive change to military criminal law is beyond the President's rule making authority. *Ellis v. Jacob*, 26 MJ 90, 92 (CMA 1988) (citing Articles 36 and 56, UCMJ" [, 10 USC §§ 836 and 856, respectively]). He then reasoned that, under precedent established by this Court in *United States v. Charlton*, 18 USCMA 141, 39 CMR 141 (1969), even incidental detention of a victim sufficed to establish kidnapping. 26 MJ at 975. Thus, appellant's guilty plea was provident. We reach the same result but depart slightly from the route followed by Senior Judge DeFord.

■ Kidnapping may be tried by a court-martial on one of three theories. *See United States v. Scholten*, 17 MJ 171, 175 (CMA 1984). If the misconduct occurred in an area over which the United States exercises exclusive or concurrent jurisdiction, the accused may be charged with violating state penal law as incorporated into federal law by the Assimilative Crimes Act, 18 USC § 13—which, in turn, is incorporated into military law under the third clause of Article 134. Secondly, if it meets the jurisdictional requirements of the Federal Kidnapping Act,[1] 18 USC § 1201—which also is incorporated into military law by the third clause of Article 134—the crime may be prosecuted under that statute. Finally, kidnapping may be charged as conduct which is service-discrediting or contrary to good order and discipline, in violation of the first two clauses of Article 134.

■ If a kidnapping charge is based upon a violation of a state statute, as incorporated by the Assimilative Crimes Act, the interpretation of that statute by the state appellate courts is binding on us. *See, e.g., United States v. Kline*, 21 MJ 366 (CMA 1986). Increasingly, state courts have recognized "[t]he inequity inherent in permitting kidnapping prosecutions of those who in reality committed lesser or different offenses, of which temporary seizure or detention played an incidental part." *See Government of Virgin Islands v. Berry*, 604 F.2d 221, 226 (3d Cir.1979).

Thus, the New York Court of Appeals concluded that the state kidnapping statute should not be interpreted literally so that it would "overrun several other crimes, notably robbery and rape." *People v. Levy*, 15 N.Y.2d 159, 164, 256 N.Y.S.2d 793, 796, 204 N.E.2d 842, 844 (1965). Another New York case points out that, under the modern approach, kidnapping statutes should be construed "to prevent gross distortion of lesser crimes into a much more serious crime by excess of prosecutorial zeal." *People v. Miles*, 23 N.Y.2d 527, 297 N.Y.S. 2d 913, 245 N.E.2d 688, 695 (1969).

According to *Berry*, California also had held that kidnapping requires an asportation which is more than "merely 'incidental to' the commission of other substantive crimes." *See* 604 F.2d at 226, citing *People v. Daniels*, 71 Cal.2d 1119, 1139, 80 Cal. Rptr. 897, 910, 459 P.2d 225, 238 (1969). In this connection, the California Court cited with approval (459 P.2d at 237) this Comment to the American Law Institute Model Penal Code:

[I]t is desirable to restrict the scope of kidnapping, as an alternative or cumulative treatment of behavior whose chief significance is robbery or rape, because the broad scope of this overlapping offense has given rise to serious injustice.... Examples of abusive prosecution for kidnapping are common. Among the worst is use of this means to secure a death sentence or life imprisonment for behavior that amounts in substance to

1. This legislation, often called the Lindbergh Act, was enacted originally in 1932. *See* 47 Stat. 326 (1932).

robbery or rape, in a jurisdiction where these offenses are not subject to such penalties. . . .

*See* Model Penal Code § 212.1, Comments at 13–14 (Tent. Draft No. 11, 1960). *Cf. People v. Adams,* 389 Mich. 222, 205 N.W.2d 415 (1973); *Cuevas v. State,* 338 So.2d 1236 (Miss.1976); *Wright v. State,* 94 Nev. 415, 581 P.2d 442 (1978); *Seay v. State,* 479 So.2d 1338 (Ala.Cr.App.1985); *Apodaca v. People,* 712 P.2d 467 (Colo. 1985); *State v. Jackson,* 703 S.W.2d 30 (Mo.App.1985); *State v. Federico,* 103 N.J. 169, 510 A.2d 1147 (1986); *Brinson v. State,* 483 So.2d 13 (Fla.App.1986). *See also* "Seizure or Detention for Purpose of Committing Rape, Robbery, or Similar Offense as Constituting Separate Crime of Kidnapping," 43 ALR 3d 699 (1972); 2 *Wharton's Criminal Law* § 210 (C. Tortia, 14th ed., 1988 cumulative supplement).

■ In view of the trend in state court decisions, it is quite likely that, in the trial of servicemembers prosecuted for kidnapping on the first theory, more than an "incidental" detention or holding would have to be proved. On the other hand, as recognized by the court below, the Federal Kidnapping Act has been interpreted quite literally. *See Chatwin v. United States,* 326 U.S. 455, 66 S.Ct. 233, 90 L.Ed. 198 (1946); *Government of Virgin Islands v. Berry, supra* at 226. Thus, an "incidental" detention or asportation will suffice to prove a violation of this Act and authorize a sentence of life imprisonment.

We now must decide whether at a court-martial the Government must prove more than an "incidental" detention if kidnapping is prosecuted on the theory that it is service-discrediting or contrary to good order and discipline and, therefore, is prohibited by the first two clauses of Article 134. In short, in a prosecution based on this theory, is it sufficient to prove only so much as would be required to establish

guilt under the Federal Kidnapping Act; or[f] is it necessary to prove a more substantial detention, as might be required if the Government relied on the Assimilative Crimes Act and if the relevant state followed the modern trend?

In *United States v. Charlton,* 18 USC-MA 141, 39 CMR 141, we concluded that even an incidental detention would suffice. In this connection, the Court relied heavily on its interpretation of the District of Columbia Code; and the premise was that, "since we looked to that source for the limitation on punishment, necessarily its elements should likewise govern the nature of the offense set out under the general article." *Id.* at 143, 39 CMR at 143. Judge Ferguson dissented because he did not believe that the District of Columbia Code was

> so "plain and unambiguous" that it "is to be applied, not interpreted." In that regard, I find it significant that "[t]his statute has never been construed by the courts of the District of Columbia."

*Id.* at 145, 39 CMR at 145.

The holding in *Charlton* is somewhat suspect, for in *Scholten,* we later rejected the rationale that, because the D.C.Code provided a limitation on punishment, the D.C.Code necessarily governed the definition of the crime. Moreover, under the 1984 Manual, the D.C.Code no longer has any relevance to punishments imposable under military law; and so *Charlton*'s premise is outmoded.[2]

In *United States v. Santistevan,* 22 MJ 538 (NMCMR 1986), the Court of Military Review noted the variance between some of the state interpretations of kidnapping statutes and the interpretation of the federal statute. They listed six factors to be balanced in determining if "an act constitutes kidnapping in situations during which a separate offense is committed." *See id.* at 543.[3] After applying and balancing the

---

2. As noted by the court below, "The past practice of incorporating statutes of the District of Columbia into military law under Article 134 was stopped when the District of Columbia was

granted home rule." *See* 26 MJ 972, 973 n. 1 (1988).

3. In *Government of Virgin Islands v. Berry,* 604 F.2d 221 (1979), the Third Circuit listed "four

six factors, the Court of Military Review was convinced that the accused was attempting to kidnap the victim in connection with performing forcible sodomy on her.

In affirming the Court of Military Review, we observed that the accused's "actions support the finding of an attempt to kidnap which was neither 'incidental' to nor an integral part of any other criminal act." However, we did not discuss the six factors on which the court below had relied. 25 MJ 123, 126 (CMA 1987).

■ In the case at bar, the court below concluded that paragraph 92c(2) of the Manual was an impermissible attempt by the President to change the substantive law. We are convinced that, instead, it merely expressed the President's view as to how the first two clauses of Article 134 should be construed and applied.[4]

Since we interpret paragraph 92c(2) as only a discussion, rather than a binding regulation, we perceive no conflict here between congressional and presidential authority. However, if the President, who is the Commander-in-Chief, concludes that certain conduct is not in itself service-discrediting or contrary to good order and discipline, we assume that Congress would be reluctant for that conduct to be prosecuted as a violation of the first two clauses of Article 134.

We also recall—as did the Third Circuit in *Government of Virgin Islands v. Berry*, 604 F.2d at 225—that

"[a]ll laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence."

Quoting from *United States v. Kirby*, 74 U.S. (7 Wall.) 482, 486, 19 L.Ed. 278, 280 (1868). Congress chose to prohibit specifically a number of familiar crimes, such as rape, robbery, and sodomy; but it left kidnapping for prosecution under Article 134.

Presumably, the general language of that Article was not intended to be construed in such a way that would lead to an oppressive result—namely, the automatic escalation of routine robberies and similar crimes *of violence into life offenses by adding a charge of kidnapping.*

As the Third Circuit observed in *Berry*, "the emerging body of law, and the all-but-unanimous view of the commentators, constitutes a rejection of" what was "the traditional rule ... that any asportation ... of the victim, no matter how short in distance or duration, was sufficient to establish the crime of kidnapping." 604 F.2d at 225. The Uniform Code includes many offenses that are familiar in state penal codes but which are generally not federal crimes. With this in mind, we are reluctant to reject what seems to be the currently prevailing state interpretation in favor of that which has governed in prosecutions under 18 USC § 1201.

■ Since the Uniform Code does not contain specific language like that on which the Supreme Court relied in *Chatwin* when it interpreted the Lindbergh Act, we are not compelled to reject the modern trend of decision. Accordingly, we conclude that the language in paragraph 92c(2) accurately describes the law to be applied in a kidnapping prosecution based on the first two clauses of Article 134. On the other hand, the Government bears a lesser burden if the prosecution is based on the Federal Kidnapping Act or, pursuant to the Assimilative Crimes Act, on a state statute which imposes liability even when a detention or asportation is "incidental" or "momentary."

■ In interpreting the term "incidental," appellate government counsel has suggested that the opinion of the Court of Military Review in *Santistevan* provides guidance. We agree and conclude that the six factors set forth in Senior Judge Mitch-

---

factors" to be considered in determining whether a defendant had engaged in kidnapping, as defined by the Virgin Islands Code. *Id.* at 227.

4. Perhaps it also was intended to provide guidance to prosecutors and convening authorities that "incidental" detentions should not be prosecuted as kidnapping.

ell's opinion (22 MJ at 543) provide a suitable framework within which to deal with this issue.

## C

■ Although we agree with appellate defense counsel that, for a kidnapping conviction to take place under the first two clauses of Article 134, there must be more than an "incidental" detention or asportation, it is not necessary to set aside this appellant's conviction. Even though Jeffress only moved his victim some 15 feet, this fact is not "inconsistent with the [guilty] plea" for purposes of Article 45 of the Code, 10 USC § 845. In many state cases where the modern view of kidnapping has been applied, movement of the victim for only a few feet has sufficed to establish guilt.

Thus, in *Yescas v. People*, 197 Colo. 379, 593 P.2d 358 (1979), the victim was moved 20 feet from a lighted stairway to an unlighted area behind a hedge. In *State v. Turbeville*, 235 Kan. 993, 686 P.2d 138 (1984), the victims were moved from the front display area of a store to an adjacent office in the back. In *Seay v. State*, 479 So.2d 1338 (Ala.Cr.App.1985), the victim was moved 60 yards from a parking lot to a wooded area. In *Coram v. Common-*wealth, 3 Va.App. 623, 352 S.E.2d 532 (1987), the victim was dragged from a driveway 20 feet to two bushes out of the public view; *see also State v. Schmidt*, 213 Neb. 126, 327 N.W.2d 624 (1982); *State v. Hall*, 280 S.C. 74, 310 S.E.2d 429 (1983); *State v. Newman*, 308 N.C. 231, 302 S.E.2d 174 (1983); *Faison v. State*, 426 So.2d 963 (Fla.1983); *State v. Jackson*, 703 S.W.2d 30 (Mo.App.1985); *Davis v. State*, 180 Ga.App. 190, 348 S.E.2d 730 (1986); *Government of Virgin Islands v. Ventura*, 775 F.2d 92 (3d Cir.1985); *Government of Virgin Islands v. Alment*, 820 F.2d 635 (3d Cir.1987).

Jeffress moved his victim away from the traveled area into greater darkness and to a place where there was increased risk of harm to her. Dragging Private Henneous away from the beaten path was not inherent in the crime of forcible sodomy. The admitted facts are consistent with the conclusion that, here, the detention was more than "incidental." Under the circumstances here, we are convinced that acceptance of the guilty plea was proper.

## D

The decision of the United States Army Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.