**UNITED STATES, Appellee,**

v.

**Donna L. BARNES, Private
U.S. Army, Appellant.**

No. 68,241.
CMR No. 9102191.

U.S. Court of Military Appeals.

Argued June 1, 1993.
Decided Sept. 27, 1993.

For Appellant: *Captain Michael E. Smith* (argued); *Lieutenant Colonel James H. Weise* and *Major James M. Heaton.*

For Appellee: *Captain Jane F. Polcen* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Richard A. Gallivan, Major Joseph C. Swetnam.*

## Opinion of the Court

CRAWFORD, Judge:

In late September 1991 appellant was tried at Darmstadt, Germany, before a military judge sitting as a general court-martial. Contrary to her pleas, appellant was found guilty of conspiracy to kidnap, assault consummated by a battery (2 specifications), aggravated assault, and kidnapping, in violation of Articles 81, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 881, 928, and 934, respectively. She was sentenced to a dishonorable discharge, confinement for 4 years, and total forfeitures. The convening authority approved the sentence. The Court of Military Review affirmed the findings and sentence in an opinion dated June 3, 1992.

On October 8, 1992, this Court specified the following issues for review:

### I

WHETHER SPECIFICATIONS 1 THROUGH 3 OF CHARGE III ARE MULTIPLICIOUS FOR FINDINGS. *SEE UNITED STATES V. RUSHING,* 11 MJ 95, 98 (CMA 1981).[*]

### II

WHETHER THE DETENTION OF THE VICTIM IN THIS CASE AMOUNTED TO KIDNAPPING AS A MATTER OF LAW.

### III

WHETHER THE EVIDENCE AS TO THE SPECIFICATION OF CHARGE I SUPPORTS THE FINDING OF GUILTY TO CONSPIRACY TO COMMIT KIDNAPPING.

We hold that there was sufficient evidence for a rational trier of fact to have found the essential elements of kidnapping beyond a reasonable doubt. We also hold that the evidence of record was legally sufficient to support appellant's conviction for conspiracy to kidnap.

## FACTS

The evidence presented at trial disclosed that the victim, Private (PVT) S, was a witness at a prior summary court-martial at which appellant was convicted of adultery, committing indecent acts, being disorderly, and absence from her appointed place of duty. During that trial, appellant was overheard threatening to "get" PVT S. PVT S knew appellant because she had formerly roomed with her. PVT S also knew and was "real good friends" with PVT D, the alleged co-conspirator. The incident which led to appellant's conviction occurred in PVT D's room which adjoined appellant's room via a shared bathroom.

On the night of the activities leading to the charges against appellant, PVT D went to PVT S's room to see her. PVT S wanted "to stay there" and talk, but PVT D requested that PVT S come to her room. Later that evening PVT S went to PVT D's room. Upon PVT S's entering the room, PVT D locked the front door. PVT S and PVT D had talked for about an hour when appellant entered the room through the bathroom entrance. Thereafter an argument ensued regarding PVT S's testimony at appellant's summary court-martial. Appellant threatened to use a .9–millimeter weapon on PVT S unless she kept quiet about what was about to happen.

---

* Based on *United States v. Teters,* 37 MJ 370 (CMA 1993), we hold that these specifications are not multiplicious.

For the next hour or 2 PVT S was subjected to various assaults. Appellant repeatedly hit PVT S in the face with her fists and a combat boot while holding on to PVT S's hair. Appellant also lit PVT S's hair and t-shirt on fire. Finally, appellant and PVT D took off all of PVT S's clothes, tied her hands and feet to the bed with shoelaces, and stuffed a sock in her mouth. Then appellant proceeded to beat PVT S with a plastic coat hanger.

During this 2–hour period, appellant and PVT D both left the room at various times. At one point appellant's roommate asked what was going on and was told by appellant that she and PVT D were messing S up. PVT S finally escaped by loosening the shoelaces when PVT D and appellant left the room to buy some beer.

## DISCUSSION

### I

■ Issue II considers the sufficiency of the evidence to support a conviction for kidnapping. To determine the sufficiency of evidence to establish kidnapping, we must decide whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also United States v. Blocker*, 32 MJ 281 (CMA 1991).

Appellant was charged with kidnapping as a service disorder or discredit in violation of Article 134. The President has expressed his view as to the elements of this offense in paragraph 92(b), Part IV, Manual for Courts–Martial, United States, 1984, as follows:

(1) That the accused seized, confined, inveigled, decoyed, or carried away a certain person;

(2) That the accused then held such person against that person's will;

(3) That the accused did so willfully and wrongfully; and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

■ As to the second element, this Court indicated in *United States v. Jeffress*, 28 MJ 409, 414 (CMA 1989), that "there must be more than an 'incidental' detention...." The Court in *Jeffress* concluded that a six-factor balancing test set forth in *United States v. Santistevan*, 22 MJ 538, 543 (NMCMR 1986), *aff'd*, 25 MJ 123 (CMA 1987), "provide[d] a suitable framework" to interpret the term "incidental." 28 MJ at 413–14. These six factors are:

a. The occurrence of an unlawful seizure, confinement, inveigling, decoying, kidnapping, abduction or carrying away *and* a holding for a period. Both elements must be present.

b. The duration thereof. Is it appreciable or *de minimis?* This determination is relative and turns on the established facts.

c. Whether these actions occurred during the commission of a separate offense.

d. The character of the separate offense in terms of whether the detention/asportation is inherent in the commission of that kind of offense, at the place where the victim is first encountered, without regard to the particular plan devised by the criminal to commit it....

e. Whether the asportation/detention exceeded that inherent in the separate offense and, in the circumstances, evinced a voluntary and distinct intention to move/detain the victim beyond that necessary to commit the separate offense at the place where the victim was first encountered....

f. The existence of any significant additional risk to the victim beyond that inherent in the commission of the separate offense at the place where the victim is first encountered. It is immaterial that the additional harm is not planned by the

criminal or that it does not involve the commission of another offense.

22 MJ at 543.

■ Applying these six factors to this case, we conclude that there was evidence of a holding that was not merely incidental to a separate offense. PVT S was locked in the room and detained for over 2 hours against her will. A rational trier of fact could reasonably believe that over 2 hours is a substantial period of time and more than *de minimis*. Further, this detention occurred during commission of two separate acts of assault. The assault offenses may involve some detention, but here PVT S was held far longer than necessary to commit the assaults. She was stripped naked and then tied to a bed. Moreover, she was not assaulted for several minutes at a time while in this position. The assailants at one point even left the room while PVT S was still tied to the bed. This detention imposed additional risk to PVT S as she was vulnerable to further assaults and additional injuries.

Accordingly, we hold that the detention of PVT S by appellant was sufficient to support a finding of kidnapping.

## II

■ The final issue concerns the sufficiency of the evidence to support a finding of conspiracy to kidnap. A conspiracy to kidnap may be found if appellant and a co-conspirator entered into an agreement to kidnap the victim and, while the agreement continued to exist, either conspirator performed an overt act for the purpose of bringing about the kidnapping. Para. 5(b), Part IV, Manual, *supra; see also United States v. Leichtman,* 742 F.2d 598 (11th Cir.1984).

■ The existence of a conspiracy "need not take any 'particular form or be manifested in any formal words.'" *United States v. Matias,* 25 MJ 356, 362 (CMA 1987) [quoting *United States v. Jackson,* 20 MJ 68, 69 (CMA 1985)], *cert. denied* in *Matias,* 485 U.S. 968, 108 S.Ct. 1242, 99 L.Ed.2d 441 (1988). The agreement to

prove conspiracy can be silent, *United States v. Williams–Hendricks,* 805 F.2d 496, 502 (5th Cir.1986); "tacit[,] or [only a] mutual understanding among the parties." *United States v. Ellzey,* 874 F.2d 324, 328 (6th Cir.1989); *see, e.g., United States v. Martin,* 790 F.2d 1215, 1219 (5th Cir.), *cert. denied,* 479 U.S. 868, 107 S.Ct. 231, 93 L.Ed.2d 157 (1986); *United States v. Alemany Rivera,* 781 F.2d 229, 234 (1st Cir. 1985), *cert. denied,* 475 U.S. 1086, 106 S.Ct. 1469, 89 L.Ed.2d 725 (1986). The Court in *Matias* found that the existence of a conspiracy is generally established by circumstantial evidence and is usually manifested by the conduct of the parties themselves. *See also United States v. Leichtman,* 742 F.2d at 603; *United States v. Jacobs,* 451 F.2d 530, 535 (5th Cir.1971), *cert. denied,* 405 U.S. 955, 92 S.Ct. 1170, 31 L.Ed.2d 231 (1972). Conduct alone is sufficient to show an agreement. *United States v. Layne,* 29 MJ 48, 51 (CMA 1989). Finally, the conspiracy or agreement need not precede a substantive or overt act but, rather, may be "contemporaneous" with the offense. *United States v. Matias,* 25 MJ at 362.

■ Applying the standard of review in *Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d 560, to the facts of this case, we conclude that there was sufficient evidence of an implied agreement and an overt act which could, and did, lead a rational trier of fact to conclude that there was a conspiracy to commit kidnapping.

First, the victim testified that, after she was in the room and the door had been locked behind her, she later overheard Barnes saying to PVT D, "Don't let her leave. I'm not done with her yet." One of the co-conspirators was also overheard saying to appellant's roommate, "We're teaching her a lesson." The other co-conspirator said, "We're beating the shit out of her for ... what she did to us." A trier of fact could infer from these statements that the conspirators held a common purpose and intent to hold and harm PVT S, and to seek revenge against her. These statements

suggest a tacit agreement to kidnap the victim.

■ Second, in addition to a common purpose or motive, there were ample means to carry out the agreement. Appellant and PVT D were friends whose bedrooms adjoined. They had a convenient location to hold PVT S while attracting little attention. The record shows that, during the 2 hours that they held and assaulted PVT S, they played loud music so their neighbors would not suspect anything.

Finally, there were several overt acts which establish the final component of conspiracy to kidnap. The evidence reveals that appellant and PVT D worked together to tie up PVT S. PVT D also searched for and found the plastic hanger which subsequently was used by appellant to whip the victim. In addition, at one point PVT D held the victim down so she could not escape.

We conclude that a rational trier of fact could have found an implied agreement and subsequent overt acts which would prove a conspiracy to kidnap beyond a reasonable doubt.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, GIERKE, and WISS concur.