UNITED STATES, Appellee

v.

Aaron C. NEWBOLD, Boatswain's Mate
Third Class, U.S. Navy, Appellant.

No. 95–0645.
Crim. App. No. 93–1432.

U.S. Court of Appeals for
the Armed Forces.

Argued May 21, 1996.

Decided Sept. 27, 1996.

For Appellant: *Robert A. Parks* (argued);
*Major Steven P. Hammond*, USMC; *Lieutenant James P. Benoit*, JAGC, USNR (on brief).

For Appellee: *Lieutenant John R. Livingston*, Jr., JAGC, USN (argued); *Colonel Charles Wm. Dorman*, USMC and *Commander D.H. Myers*, JAGC, USN (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

Pursuant to his pleas, appellant was convicted at Naval Base, Charleston, South Carolina, of conspiracy to commit rape, rape, forceful sodomy, indecent assault, committing indecent acts, and kidnapping, in violation of Articles 81, 120, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 881, 920, 925 and 934, respectively. He was sentenced by the military judge to a dishonorable discharge, 15 years' confinement, total forfeitures, and reduction to the lowest enlisted grade. Pursuant to a pretrial agreement, the convening authority approved the sentence, but suspended confinement in excess of 10 years. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion. We granted review of the following:

## GRANTED ISSUE

WHETHER LIEUTENANT COMMANDER [LCDR] CASTO, THE COMMANDING OFFICER OF THE USS ALAMOGORDO, USED UNLAWFUL COMMAND INFLUENCE TO CREATE AN ATMOSPHERE THAT FORCED THE APPELLANT TO PLEAD GUILTY AND KEPT OTHERS FROM SUPPORTING HIM WITH CHARACTER, EXTENUATION, AND MITIGATION EVIDENCE.

## SPECIFIED ISSUE

WHETHER APPELLANT'S PLEA OF GUILTY TO KIDNAPPING IS PROVIDENT IN LIGHT OF THE FACT THAT THE VICTIM WAS MOVED NO MORE THAN 12 FEET, WITHIN THE SAME ROOM, AND DETAINED ONLY LONG ENOUGH TO COMPLETE THE OTHER CHARGED OFFENSES.

We hold that appellant has not carried his burden to show there was any unlawful command influence that tainted the proceedings. *United States v. Thomas*, 22 MJ 388, 393 (CMA 1986). Further, we hold that the movement of the victim for no more than 12

feet was asportation that was not merely incidental to the other offenses charged. *Government of Virgin Islands v. Alment*, 820 F.2d 635, 637–40 (3d Cir.1987); State v. Zimmerman, 251 Kan. 54, 833 P.2d 925, 930–31 (1992); *Faison v. State*, 426 So.2d 963, 965–66 (Fla.1983). Thus, there is not "a 'substantial basis' in law and fact for questioning the plea." *United States v. Prater*, 32 MJ 433, 436 (CMA 1991).

## FACTS

Appellant, and four shipmates, Dickey, Holtzclaw, Moreno, and Hayes, topped off the night of a birthday celebration by bringing a prostitute to an apartment. After an argument concerning services, the victim went to the front door in an attempt to leave. Appellant, believing he did not obtain his money's worth, asked her to go back upstairs to the bedroom. Dickey then blocked her way, pulled a pistol, and began to wave it in her face. The victim called Dickey's "bluff"; he put the pistol away; and she again attempted to leave. This time appellant grabbed her and pulled her away from the door. A physical altercation ensued. The victim was eventually dragged to the middle of the living room that was about 10–12 feet from the door. She was then assaulted, raped, and sodomized by the sailors. In the midst of this activity, she was moved from the floor to a couch, about 5 feet away.

According to an affidavit submitted by Seaman Apprentice Snodgrass, the day following appellant's arrest, the ship's commander, LCDR Casto, held an "all hands" formation at which he discussed the incident and referred to the participants as "low lifes" and "scumbags." He opined that the men deserved to be punished.

About 2 weeks later at a second "all hands" meeting, LCDR Casto read Hayes' letter apologizing for "letting a lot of people down." LCDR Casto then said he could not understand how some of the crew could "welcome these rapist[s] back into our arms." Snodgrass further asserted that at a meeting among female sailors where subjects such as pregnancy, child support, and fraternization were discussed, LCDR Casto told them that

there were a number of male sailors who had little regard for females and targeted them for sexual conquests, even to the point of keeping score. According to Snodgrass, LCDR Casto referred to them as animals. Finally, Snodgrass believed these speeches had an impact on the ship's company. When she went to the petty officers' mess to pay appellant's bill, a first class petty officer, presumably the treasurer, remarked that appellant was a "rapist."

All five sailors pleaded guilty to charges arising from these events.

### DISCUSSION—Granted Issue

■ "Command influence is the mortal enemy of military justice." *United States v. Thomas,* 22 MJ at 393. "[T]he initial burden of producing sufficient evidence" of unlawful command influence is on appellant. *United States v. Ayala,* 43 MJ 296, 299 (1995), citing *Green v. Widdecke,* 19 USCMA 576, 579, 42 CMR 178, 181 (1970); *Thomas,* 22 MJ at 396; *United States v. Rosser,* 6 MJ 267 (CMA 1979). *See also* RCM 905(c)(2)(A), Manual for Courts–Martial, United States (1995 ed.), which states: "Except as otherwise provided in this Manual the burden of persuasion on any factual issue the resolution of which is necessary to decide a motion shall be on the moving party." This Court has been vigilant to combat unlawful command influence at the investigative stage, preferral stage, referral stage, trial stage, and even the post-trial stage. *United States v. Stombaugh,* 40 MJ 208, 211 (CMA 1994). When an allegation is made of unlawful command influence:

> [A]n appellant must (1) "allege[ ] sufficient facts which, if true, constitute unlawful command influence"; (2) show that the proceedings were unfair; and (3) show that the unlawful command influence was the proximate cause of that unfairness. We adopt this test. The same three-pronged analysis would apply to an allegation of unlawful interference with access to witnesses.

40 MJ at 213.

■ The Court of Criminal Appeals held that "appellant . . . failed to meet his burden to establish . . . apparent unlawful command influence." Unpub. op. at 4. We agree. Appellant waived an Article 32, UCMJ, 10 USC § 832, investigation, and there is nothing in the record to indicate that the commander made any recommendations as to the disposition of the charges. This is not a case where the commander was the special court-martial convening authority. *Cf. United States v. Nix,* 40 MJ 6 (CMA 1994). No members of the court-martial were from appellant's ship. Moreover, there is no evidence that any unlawful command influence caused appellant to plead guilty. While there are general allegations that he was deprived of witnesses, a senior petty officer from appellant's ship with 27 years service testified on his behalf.

Thus, we hold that appellant has not met his burden to show there was command influence that affected the proceedings.

### DISCUSSION—SPECIFIED ISSUE

■ The standard for finding error in a military judge's acceptance of a guilty plea "requires that the record of trial show a 'substantial basis' in law and fact for questioning the guilty plea." *United States v. Prater,* 32 MJ at 436.

■ During the providence inquiry, appellant discussed the "incidental" question:

> MJ: Was this movement ultimately from the door to the couch incidental to committing the criminal offense of rape?
>
> ACC: I don't understand the question, sir.
>
> MJ: Well, was that an incident? In other words, did you put her on that couch, ultimately put her there, to enable you to commit the criminal offense of rape?
>
> ACC: Yes, sir.

Appellant argues that his pleas were improvident as a matter of law because the victim was moved no more than 12 feet within the same room and detained only long enough to complete the underlying offenses. It is argued that this is insufficient to satisfy the second element of kidnapping, which requires the accused to have held the victim against her will. *See* para. 92b(2), Part IV, Manual, *supra.* This holding must be more

than a momentary or incidental detention. ¶ 92c(2). This interpretation is consistent with the modern view of kidnapping law. *See United States v. Jeffress*, 28 MJ 409, 414 (CMA 1989).

A movement of the victim for only a few feet has sufficed to establish guilt. As this Court pointed out in *Jeffress:*

> Thus, in *Yescas v. People*, 197 Colo. 379, 593 P.2d 358 (1979), the victim was moved 20 feet from a lighted stairway to an unlighted area behind a hedge. In *State v. Turbeville*, 235 Kan. 993, 686 P.2d 138 (1984), the victims were moved from the front display area of a store to an adjacent office in the back. In *Seay v. State*, 479 So.2d 1338 (Ala.Cr.App.1985), the victim was moved 60 yards from a parking lot to a wooded area. In *Coram v. Commonwealth*, 3 Va.App. 623, 352 S.E.2d 532 (1987), the victim was dragged from a driveway 20 feet to two bushes out of the public view.

28 MJ at 414.

A test to consider whether the asportation or detention is merely incidental to other offenses was developed in *United States v. Santistevan*, 22 MJ 538, 543 (NMCMR 1986), *aff'd*, 25 MJ 123 (CMA 1987), and was subsequently adopted by this Court in *United States v. Jeffress*, 28 MJ at 413, and *United States v. Barnes*, 38 MJ 72, 74 (CMA 1993).

This test examines six factors to determine if the asportation or detention was more than incidental to the other offenses. According to *Barnes, supra* at 74–75, which states the language in bold, these factors were:

(1) **"The occurrence of an unlawful seizure, confinement, inveigling, decoying, kidnapping, abduction or carrying away and a holding for a period. Both elements must be present."**

The evidence of record that supports the existence of this factor is as follows:

● Dickey blocked M's exit, then waved a gun in her face when she tried to leave.

● When M tried to leave again, appellant grabbed her and pulled her away from the door.

● Appellant and M began wrestling and fighting and M was still trying to leave.

● As appellant was wrestling with M, they ended up about 12 feet away from the door and appellant threw M down in the middle of the living room.

● M was later moved by the coconspirators about 5 feet from the "floor to the couch."

(2) **"The duration thereof. Is it appreciable or *de minimis?* This determination is relative and turns on the established facts."**

The evidence of record that supports the existence of this factor is as follows:

● M was held against her will the entire time.

● The duration was not stated on the record, but the following acts were committed during the confined period: a loaded firearm was pointed at M, she was grabbed, punched and kicked about her face and body, held down on the floor, and ultimately moved to the couch where her clothes were forcibly removed, she was then raped, sodomized twice, forced to fondle the assailants, and an attempt was made to insert a broomstick into her; she was also subjected to other indecent acts and assaults and two separate movements.

(3) **"Whether these actions occurred during the commission of a separate offense."**

The evidence of record that supports the existence of this factor is as follows:

● The offenses as stated above were committed during the confinement period.

(4) **"The character of the separate offense in terms of whether the detention/asportation is inherent in the commission of that kind of offense, at the place where the victim is first encountered, without regard to the particular plan devised by the criminal to commit it...."**

The evidence of record that is relevant to this factor is as follows:

● One cannot be subjected to all of these sexual offenses without first being detained to some extent, but the initial "contract"

dispute did not require any incidental detention.

(5) "**Whether the asportation/detention exceeded that inherent in the separate offense and, in the circumstances, evinced a voluntary and distinct intention to move/detain the victim beyond that necessary to commit the separate offense at the place where the victim was first encountered. . . .**"

The evidence of record that supports the existence of this factor is as follows:

●M was held against her will not only for the purposes of these offenses, but as a means of dominance or a show of force [presumably to settle the services dispute to appellant's benefit].

(6) "**The existence of any significant additional risk to the victim beyond that inherent in the commission of the separate offense at the place where the victim is first encountered. It is immaterial that the additional harm is not planned by the criminal or that it does not involve the commission of another offense.**"

The evidence of record that supports the existence of this factor is as follows:

●The movement of M away from the door made the possibility of escape a limited one. One can also draw the inference from the record that once the detention began, the subsequent offenses necessarily were "fed" by the increasingly more heinous actions of the others.

Thus, based on these factors, we hold that there is no substantial basis to question appellant's guilty plea. Every element of kidnapping has been satisfied.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Chief Judge COX and Judge GIERKE concur.

EVERETT, Senior Judge (concurring):

For me, this truly is a borderline case of kidnapping, and I believe that we have stretched "kidnapping" as far as Congress could have contemplated, perhaps farther. In view of our precedents and appellant's guilty pleas, however, I concur in the majority opinion.

SULLIVAN, Judge (concurring in the result):

Considering my separate opinion in *United States v. Ayala,* 43 MJ 296, 301–04 (1995), I reach the same result as the majority opinion in this case. The comments made by the ship's captain were improper. *See United States v. Levite,* 25 MJ 334, 339 (CMA 1987); *see also United States v. Cruz,* 25 MJ 326, 330 (CMA 1987). However, the defense did not present any evidence that this conduct impacted on appellant's trial. *See United States v. Thomas,* 22 MJ 388, 396 (CMA 1986). As for the specified issue, I believe this issue was already decided in *United States v. Holtzclaw,* 43 MJ 452 (1995)(summary disposition).