# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
LIND, KRAUSS, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**

**v.**

**Private E1 KENDRICK J. SNEED**
**United States Army, Appellant**

ARMY 20131062

Headquarters, Fort Bliss
Timothy P. Hayes, Jr., Military Judge
Colonel Karen H. Carlisle, Staff Judge Advocate

For Appellant:  Captain Heather L. Tregle, JA (argued); Lieutenant Colonel Charles D. Lozano, JA; Major Aaron R. Inkenbrandt, JA; Captain Heather L. Tregle, JA (on brief).

For Appellee:  Captain Jihan Walker, JA (argued); Colonel John P. Carrell, JA; Major John K. Choike, JA; Captain Jihan Walker, JA (on brief).

27 March 2015

---------------------------------
OPINION OF THE COURT
---------------------------------

KRAUSS Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of three specifications of aggravated assault with a means likely to cause death or grievous bodily harm, seven specifications of assault consummated by a battery, and one specification of kidnapping in violation of Articles 128 and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 928, 934 (2012).  Appellant was sentenced to a dishonorable discharge and confinement for nine years.  Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as provided for a dishonorable discharge and confinement for six years.

SNEED—ARMY 20131062

This case is before the court for review under Article 66, UCMJ.[1]  Appellant argues there is substantial basis in law and fact to question his plea to kidnapping because the judge failed to properly define an element of the offense of kidnapping and because the record established that the victim's holding was merely incidental to appellant's attempted robbery of her debit card.  We find appellant's assignment of error warrants discussion but no relief.

**FACTS**

Over the course of a year, appellant repeatedly subjected his girlfriend, Specialist (SPC) BG, to a variety of emotional and physical abuse.  This abuse included an incident where, in the midst of yet another argument, appellant shoved a pregnant SPC BG into his closet in the barracks and locked her in for, as he stated, not more than 10 minutes.  This act was charged as an act of kidnapping under Article 134, UCMJ.  Appellant pled guilty to the kidnapping as charged.

The stipulation of fact provides the following:

> In September 2012, when SPC [BG] was almost nine months pregnant she was in the accused's barracks room getting ready for work after physical training.  The accused demand [sic] she give him her debit card to buy a plane ticket for his brother to visit El Paso from Houston.  SPC [BG] refused explaining she needed to save money for the baby.  The accused persisted and the two began to argue.  Finally, the accused grabbed her and threw her in his closet.  She landed on her very pregnant stomach and the accused locked the closet.  She was trapped; she banged on the door and begged him to let her out.  He refused; he kept her locked in the closet.  She kept yelling and banging on the door.  He told her he would release her when she would stop and give him her debit card.  With no choice, she relented and said she would give him her debit card.  He let her out and was sitting at a computer desk in his Army combat uniform and boots.  When she walked past him, he kicked her on the leg so hard that it caused her to fall over on her pregnant stomach.  She tried to give him her debit card to stop the violence, but he refused to take it, stating that he should not have to do all that to get money from her, she should just give it to him.

---

[1] Oral argument in this case was heard in Waco, Texas on 18 February 2015 at Baylor Law School as part of the "Outreach Program" of the United States Army Court of Criminal Appeals.

2

One of the aggravated assaults in this case was based on appellant's kicking of SPC BG after he released her from the closet.

During the providence inquiry the appellant stated in pertinent part:

> I confined my girlfriend, Specialist [BG]. When I confined her, I did so against her will. The way I did this was when I pushed her into my closet, I shut the door and prevented her from leaving. My actions were intentional. By that, I mean, I specifically intended to hold her in my closet against her will. Holding her in my barracks room closet was wrongful because I had no justification or excuse for my actions.

> When I held [SPC BG] in my closet, I know she feared for her safety. She was between eight and nine-months pregnant, and I believe she feared for her safety. My actions caused her emotional stress, likely affected her ability to perform her duties as a Soldier. It also could've resulted in premature birth of our son, and that could have brought on complications that affected her ability to return to duty after the birth. These things had an impact on good order and discipline.

> Additionally, my actions were of a nature to bring discredit upon the armed forces. The act of kidnapping and holding a pregnant woman against her will in a closet is a type of misconduct that would reasonably tend to bring the service in disrepute and lower it in public esteem.

Subsequently, the following exchange between the military judge and appellant occurred:

> MJ: And, when you pushed her in there and locked it, you intended to keep her in there against her will for a period of time?

> ACC: Yes, sir.

> MJ: I believe you were trying to get her to give you some information?

> ACC: Yes, sir.

MJ: Was it a credit card number, debit card number, or something like that?

ACC: Yes, sir.

MJ: So, were you intending to hold her in there until she gave it to you?

ACC: Yes, sir.

. . . .

MJ: Did she give it to you while she was still in there, or did she say, "I'll give it to you if you let me out"?

ACC: She said that she would give it to me if she got out, sir.

MJ: And she did?

ACC: Yes, sir.

MJ: Or, at that point, didn't you tell her that you didn't want it anymore?

ACC: Yes, sir.

MJ: And, you agree that it was wrong to detain her that way, to confine her in the closet?

ACC: Yes, sir.

The judge described the elements and definitions of kidnapping, in pertinent part, as follows:

First, that at or near Fort Bliss, Texas, between on or about 15 September 2012 and on or about 19 October 2012, you confined [SPC BG];

Second, that you held her against her will;

Third, that you did so willfully and wrongfully; and

Fourth, that under the circumstances your conduct was to the prejudice of good order and discipline in the armed forces, or of a nature to bring discredit upon the armed forces.

. . . .

"Confined" means to forcibly and unlawfully carry away another person and detain, keep, or confine that person against their will.

"Held" means detained;

"Against the person's will" means the victim was held involuntarily;

"Wrongfully" means without justification or excuse.

## LAW & ANALYSIS

Appellant now complains there is a substantial basis in law and fact to reject his plea because: (1) the judge failed to fully and properly define the offense of kidnapping, and (2) the providence inquiry and stipulation of fact established that appellant's holding of SPC BG was merely incidental to his attempt to obtain SPC BG's debit card. *See generally United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008); *United States v. Jeffress*, 28 M.J. 409, 412-14 (C.M.A. 1989); *Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*], pt. IV, ¶ 92.c.(2).

We agree with appellant that the judge failed to fully define the offense by failing to provide that the "holding" required to constitute kidnapping under Article 134, UCMJ, "must be more than a momentary or incidental detention." *MCM*, pt. IV, ¶ 92.c.(2); *see also Jeffress*, 28 M.J. at 414. This limit to the scope of kidnapping under Article 134 is essential to the offense. Otherwise, as to incidental detentions,[2] a soldier would be subject to conviction and life in prison under Article 134, UCMJ, for an act better described by offenses carrying far lesser punishment. *Jeffress*, 28 M.J. at 413.

A classic illustration of this limit, and one employed in the *MCM* and Military Judges' Benchbook, is robbery:

---

[2] Appellant does not contend, and we find no reason to consider, that his holding of the victim in this case was merely a momentary detention.

5

> [A] robber who holds the victim at gunpoint while the victim hands over a wallet . . . does not, by such acts, commit kidnapping. On the other hand, if, before or after such robbery . . . , the victim is involuntarily transported some substantial distance, as from a housing area to a remote area of the base or post, this may be kidnapping, in addition to robbery . . . .

*MCM*, pt. IV, ¶ 92.c.(2); Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook], para. 3-92-1.d (1 Jan. 2010).

### *Kidnapping as a Stand Alone Offense*

We do not agree with appellant that the facts he admitted at trial establish that his confinement of SPC BG was "incidental" to an attempted robbery. To begin with, we conclude that appellant's admissions establish that he was indifferent to the ostensible reason given for confining SPC BG in his closet—that is, to forcibly take her debit card from her. Rather, the demand for SPC BG's debit card was merely pretext to further abuse her. The particular form of abuse in this instance was forcible confinement in a locked closet for a sufficient amount of time to constitute kidnapping under Article 134, UCMJ. As such, it can properly be considered an offense that stands on its own, unrelated to the commission of any other offense. *See United States v. Dickey*, 41 M.J. 637, 643 (N.M. Ct. Crim. App. 1994), *set aside and remanded on other grounds*, 43 M.J. 170 (C.A.A.F. 1995) (summ. disp.), *aff'd*, 46 M.J. 123 (C.A.A.F. 1996) (summ. disp.) ("[I]ndependent crime of kidnapping . . . can be committed without other criminal activity when there is more than momentary detention or movement, and the requisite intent.").

### *Detention "Incidental" to Another Offense*

Secondly, the question is not whether the alleged detention was associated with commission of another crime but, rather, whether it was merely incidental to that crime. Kidnapping is frequently associated with the commission of other offenses. Our superior court adopted a six factor framework within which to resolve whether detention is merely incidental to another defense. *Jeffress*, 28 M.J. at 413-14. Those factors are:

> [1.] The occurrence of an unlawful seizure, confinement, inveigling, decoying, kidnapping, abduction or carrying away *and* a holding for a period. Both elements must be present.[3]

---

[3] This first factor seems merely to reiterate essential elements of the kidnapping offense and would therefore be considered in any event.

[2.] The duration thereof. Is it appreciable or *de minimis*? This determination is relative and turns on the established facts.

[3.] Whether these actions occurred during the commission of a separate offense.

[4.] The character of the separate offense in terms of whether the detention/asportation is inherent in the commission of that kind of offense, at the place where the victim is first encountered, without regard to the particular plan devised by the criminal to commit it. . . .

[5.] Whether the asportation/detention exceeded that inherent in the separate offense and, in the circumstances, evinced a voluntary and distinct intention to move/detain the victim beyond that necessary to commit the separate offense at the place where the victim was first encountered. . . .

[6.] The existence of any significant additional risk to the victim beyond that inherent in the commission of the separate offense at the place where the victim is first encountered. It is immaterial that the additional harm is not planned by the criminal or that it does not involve the commission of another offense.

*United States v. Barnes*, 38 M.J. 72, 74-75 (C.M.A. 1993) (omission in original) (citations omitted).

We address these factors seriatim: (1) It goes without saying that appellant admitted the occurrence of an unlawful confinement and holding for a period in this case. Otherwise, the conversation would stop as the minimum prerequisites for kidnapping under Article 134, UCMJ, would be absent. (2) Appellant detained SPC BG for an appreciable amount of time. He locked her in his closet for "not more than 10 minutes" and refused to release her though she screamed and begged to be released. (3) We assume for the purpose of this discussion that these actions occurred during appellant's purported attempt to rob SPC BG. (4) Appellant's detention of SPC BG, in his locked closet, is not the sort of detention inherent in an attempted robbery. If appellant had grabbed SPC BG and threatened to harm her unless she turned over some money, one would have the sort of detention "incidental" to robbery contemplated. Here, he threw her in a closet, locked the door, and confined her for an appreciable amount of time. (5) The first part of this factor is necessarily addressed by factor (4), above. As to the second part,

appellant's admissions cut both ways. On the one hand, in appellant's favor, he did release SPC BG from detention once she agreed to give him her card. On the other hand, it was in the midst of an argument, including a demand for SPC BG's debit card, that he threw her in the closet, after which he committed a separate assault upon her and renounced any purported interest in the card. (6) Here appellant quite readily admitted that his detention of SPC BG exposed her to additional risks, related to her pregnancy, beyond that inherent in any attempt to take her debit card.

Considering the totality of relevant circumstances admitted by appellant in the course of his plea, we hold that his detention of SPC BG was not merely incidental to attempted robbery or any other offense arguably associated with the detention. Of particular note, he confined her in a locked, dark closet for an appreciable amount of time, that confinement is not an inherently necessary aspect of robbery in any event, and, the detention exposed SPC BG to additional significant risks to her health and the health of her unborn child. Thus this act of confinement falls well within the scope of kidnapping as defined under Article 134, UCMJ.

*Appellant's Understanding of the Offense*

Finally we must address whether, despite the satisfactory factual predicate established by the record, appellant properly understood that he was guilty of kidnapping. *See generally United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008); *United States v. Redlinski*, 58 M.J. 117, 119 (C.A.A.F. 2003). The judge here failed to properly explain the elements of kidnapping to appellant. The judge did not fully and properly define "hold" as requiring that the holding "be more than a momentary or incidental detention." *MCM*, pt. IV, ¶ 92.c.(2); *see also Jeffress*, 28 M.J. at 414. This definition is an essential limit to the scope of the crime of kidnapping under Article 134, UCMJ. Therefore, we must reverse unless "it is clear from the entire record that [appellant] knew the elements, admitted them freely, and pleaded guilty because he was guilty." *Redlinski*, 58 M.J. at 119 (quoting *United States v. Jones*, 34 M.J. 270, 272 (C.M.A. 1992)) (internal quotation marks omitted); *see also United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012) ("If an accused's admissions in the plea inquiry do not establish each of the elements of the charged offense, the guilty plea must be set aside.").

Our review of the record establishes no substantial basis in law and fact to reject appellant's plea. To the contrary, the record clearly reveals that appellant well understood the nature of the kidnapping offense under Article 134, UCMJ, freely admitted the elements of that offense and pled guilty to kidnapping because he was guilty of kidnapping.

Appellant never expressed or suggested any pretense that his detention of SPC BG was merely incidental to another offense and admitted additional facts that reflect his understanding that the "holding" element requires more than a momentary

or incidental detention. Nowhere did he suggest that confining SPC BG in a locked closet against her will was necessary to obtain her debit card; in both the stipulation of fact and the plea inquiry, he admitted facts sufficient to establish his understanding that the detention must be for an appreciable time; and, he also volunteered facts relevant to both the "holding" and terminal element of the offense when discussing the significant risk of harm he imposed upon SPC BG by locking her in that closet.

Appellant quite intelligently articulated his understanding that wrongful confinement is sufficient to constitute kidnapping. This despite the rather misleading description of "confined" provided by the judge from the Benchbook suggesting that there must be some asportation before one might be guilty of kidnapping under Article 134, UCMJ. This is not true and appellant expressed his understanding that confinement is indeed enough. *See, e.g., United States v. Newbold*, 45 M.J. 109, 112 (C.A.A.F. 1996) ("[A]sportation *or* detention . . . .") (emphasis added); *see also United States v. Corralez*, 61 M.J. 737, 748 (A.F. Ct. Crim. App. 2005).[4]

In light of the entire record, therefore, we conclude that appellant knowingly, intelligently, and voluntarily entered a plea of guilty to kidnapping and that the judge did not abuse his discretion in accepting that plea. *See Weeks*, 71 M.J. at 46; *Medina*, 66 M.J. at 26; *Redlinski*, 58 M.J. at 119.

The findings of guilty and the sentence as approved by the convening authority are AFFIRMED.

Senior Judge LIND and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[4] Under Article 134, UCMJ, one can be convicted of kidnapping by either detaining *or* carrying someone away. *See MCM*, pt. IV, ¶ 92.b(1)-(2). To the extent that paragraph 3-92-1.d of the Benchbook suggests that a carrying away is always required for conviction of kidnapping, it is incorrect. *See, e.g., Corralez*, 61 M.J. at 748 ("A person who seizes and confines another against their will for an appreciable period of time can be convicted of kidnapping even if there is no movement of the victim.").