**UNITED STATES**

v.

**Staff Sergeant David S. BRADLEY,
FR227–27–2302, United States
Air Force.**

**ACM 32387 FREV.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 3 Nov. 1995.

Decided 30 June 1998.

Appellate Counsel for Appellant: William M. Ferris (argued), Colonel David W. Madsen, Lieutenant Colonel Kim L. Sheffield, and Major Kevin P. Koehler.

Appellate Counsel for United States: Captain Martin J. Hindel (argued), Colonel Brenda J. Hollis, Lieutenant Colonel Michael J. Breslin, and Captain Libby A. Brown.

Before PEARSON, Senior Judge, MORGAN and SPISAK, Appellate Military Judges.

## UPON FURTHER REVIEW

MORGAN, Judge:

Appellant was convicted by officer and enlisted court members, contrary to his pleas, of rape and indecent assault and sentenced to a dishonorable discharge, 3 years confinement, total forfeitures and reduction to E–1. In our earlier consideration of this case, we resolved three of appellant's assigned errors against him, but withheld our decision on appellant's claims of factual insufficiency and unlawful command influence until we received the result of a post-trial hearing we directed in accordance with *United States v. DuBay*, 37 C.M.R. 411, 1967 WL 4276 (C.M.A.1967). *United States v. Bradley*, 47 M.J. 715 (A.F.Ct.Crim.App.1997). Having now reviewed the results of that hearing, we conclude that appellant is entitled to no relief on either remaining issue.

### POSSIBLE UNLAWFUL COMMAND INFLUENCE

■ We review the alleged unlawful command influence *de novo*. *United States v. Wallace*, 39 M.J. 284 (C.M.A.1994). To prevail, appellant must

(1) "allege [ ] sufficient facts which, if true, constitute unlawful command influence"; (2) show that the proceedings were unfair; and (3) show that the unlawful command influence was the proximate cause of that unfairness ... The same three-pronged analysis would apply to an allegation of unlawful interference with access to witnesses.

*United States v. Newbold*, 45 M.J. 109, 111 (1996).

Appellant's claim of unlawful command influence is laid out in detail in our original opinion. *Bradley*, 47 M.J. at 719–23. In summary, the issue which necessitated the *DuBay* hearing was whether the base staff judge advocate (SJA), Lieutenant Colonel (Lt Col) Joseph F. Dent, had improperly attempted to convince a defense witness not to testify or acted in any other manner which amounted to unlawful command influence. This issue was raised primarily by the post-trial affidavit of Master Sergeant (MSgt) Lisa M. Becker. At the time we wrote our original opinion, the government had not submitted an affidavit from Lt Col Dent, and we were left to either accept MSgt Becker's allegations as true or order a post-trial hearing to resolve the issue.

■ The results of the *DuBay* hearing were enlightening and satisfy us that Lt Col Dent did not act improperly. Suffice it to say that, if the government had presented a post-trial affidavit from Lt Col Dent at the

time we originally considered this case, we might well have approached the case from an entirely different perspective. Rather than suggesting in our opinion that there appeared to be possible command influence, we would have noted the conflicting versions of the conversation which occurred between Lt Col Dent and MSgt Becker and still sent the case back for a *DuBay* hearing. *See United States v. Ginn,* 47 M.J. 236 (1997). However, we would not have suggested in our original opinion that things did not look good for Lt Col Dent. The government's failure to provide Lt Col Dent's version of events at the earlier stage of this appeal potentially left the impression that he had acted improperly.

The military judge heard the testimony of both Lt Col Dent and MSgt Becker during the *DuBay* hearing. While concluding the alleged conversation between the two occurred, the military judge found Lt Col Dent's version of the events more credible. Specifically, the judge found that MSgt Becker had called the legal office to ask about the location of the trial. Lt Col Dent was alone in the office, answered the phone, and properly identified himself. Since MSgt Becker identified herself as a former first sergeant and a possible witness in the case, Lt Col Dent asked her questions to clarify her status. MSgt Becker began to ask him various questions about appellant's case and how the decision was made to send it to trial. Eventually he explained much of the government evidence to her including the fact that appellant had made various inconsistent statements and certain admissions regarding sexual contacts with the victim, and that DNA evidence linked appellant to the crimes. Lt Col Dent also told MSgt Becker, in response to her inquiry, that appellant had refused to take a polygraph exam. He also explained to her the court-martial process and how various decisions concerning a case were made. When MSgt Becker mentioned her negative opinion of the victim's reputation, Lt Col Dent explained to her that such evidence was not normally permissible at trial because of Military Rule of Evidence 412, but that the military judge would be deciding if any such evidence was admissible.[1]

Because Lt Col Dent was responding to questions from MSgt Becker, whom at the time he considered a former first sergeant with an official interest in the case, nothing he told her was improper. After hearing about the facts of the case, MSgt Becker indicated to Lt Col Dent that she might not want to testify. While he was not sure at first whether she might be a government or defense witness, when he eventually realized from their conversation that she was a potential defense witness, he informed her that she had no choice and had to testify if she was called by either side. Additionally, once he realized she was a potential defense witness, Lt Col Dent told her that if anything he had told her had discouraged or dissuaded her from testifying, that was not his intention and, in fact, he repeated this caution to her. He also directed her to contact appellant's defense counsel and informed her how to reach them. We agree with the military judge that his actions neither indicated bias towards appellant nor amounted to unlawful command influence.

Although MSgt Becker's testimony conflicted in part with Lt Col Dent's, she admitted that although she did think about not testifying after their conversation, she nonetheless decided to testify for the appellant both on the merits and during sentencing. We note from the record that, in addition to testifying about the victim's demeanor at the hospital, she also provided strong character and truthfulness testimony on behalf of appellant. However, at the post-trial hearing she had apparently forgotten giving this latter testimony and claimed to have withheld it

1. In fact when the issue did come up at trial, the defense stated they did not intend to pursue evidence concerning the victim's allegedly promiscuous reputation. When MSgt Becker was about to testify, the defense told the judge that they were not going into that area and had cautioned the witness to avoid it. This is curious in light of the fact that MSgt Becker testified at the *DuBay* hearing that she never had a chance to discuss the victim's reputation with defense counsel prior to testifying. It is also clear from MSgt Becker's *DuBay* testimony and from other evidence in the record that the victim's reputation was well known throughout the squadron and available to the defense from numerous other sources, including many of the witnesses who testified for the defense.

because of her conversation with Lt Col Dent. Having carefully reviewed the *DuBay* hearing record, we agree with the military judge that any significant discrepancies between the two versions of events must be resolved in favor of Lt Col Dent. As the judge pointed out, MSgt Becker had clearly become a zealous advocate for appellant, both during and after the trial, which may well have colored her memory. Her negative outburst immediately following appellant's conviction in which she was heard to refer to the victim as "that fucking, lying bitch" whom she hoped "rots in hell" is evidence of her bias in the case.

■ We also agree with the military judge that the article concerning appellant's conviction in "The Eagle," a 694th Intelligence Group publication, was in no way improper command influence. It merely informed the local community of the results of appellant's trial. The reference to the Navy's Tailhook incident in that article was apparently to emphasize that all military members should be on notice about the possible consequences of sexual misconduct, not to directly liken appellant's crimes to Tailhook. In any case, it was written by Lt Col Dent, the special court-martial convening authority's SJA, who was stationed in Maryland. We found no evidence to indicate it could have possibly affected the general court-martial (GCM) convening authority or his SJA, both in Texas, even if the article had been improper. This is notwithstanding the fact that Lt Col Dent sent a copy of this article to the GCM SJA for informational purposes as a routine part of tracking the preventive law program.

■ The defense brought up one additional issue at the hearing which we had not addressed in our order for a post-trial hearing. One of appellant's court members was Captain (Capt) Mark P. Applegate, who had since retired from the Air Force. He testified that he was considering making a post-trial clemency statement on behalf of appellant but was not sure what he was allowed to do. He went to the legal office to discuss this with Lt Col Dent. He testified that Lt Col Dent told him that such a statement was a voluntary matter, but Lt Col Dent seemed to be discouraging him from submitting a

statement. He said that Lt Col Dent reminded him that appellant had been convicted and this sent a strong message to the young people of the Air Force. He further testified that, after telling him that he was not required to submit a statement, Lt Col Dent said "You don't really want to do that, do you?"

Lt Col Dent recalled the conversation but testified that while he did tell Capt Applegate such statements were voluntary, he never said anything to discourage him from making· a post-trial statement for appellant. Colonel Carl R. Behrens, a reserve judge advocate who was present during the conversation, supported Lt Col Dent's version of events and stated that he did not hear Lt Col Dent say anything improper to Capt Applegate. We agree with the military judge that Capt Applegate seemed nervous and confused during his testimony and that Lt· Col Dent's versions of events was more credible.

Capt Applegate also testified concerning a conversation between Lt Col Dent and the president of the court which he observed outside the courtroom. This is the only time Capt Applegate saw such a conversation. Although the defense suggests that this was a second conversation which occurred after the first conversation (which is already a matter of record), we agree with the military judge that the evidence does not support this conclusion. That first conversation occurred when the court president approached Lt Col Dent outside the courtroom to discuss a disciplinary matter unrelated to appellant's case. We have learned from the record of the *DuBay* hearing that Lt Col Dent realized that this conversation might be perceived as improper. In order to avoid any appearance of impropriety, he called Capt Fechhelm, the assistant trial counsel, and Capt Siciliano, the defense counsel, over to the conversation and explained to them what he was discussing with the president. Capt Siciliano raised no objection at the time.

Although the defense did make this a matter of record when the trial reconvened, neither side wanted to conduct further *voir dire* of the court president and neither objected to his continued participation as a court member. The military judge had ordered the

president to have no further discussions with the SJA or legal office personnel without going through the court first. Lt Col Dent was aware of this restriction. Capt Applegate could not remember the exact day he observed the conversation. We agree with the military judge that it is highly unlikely that both Lt Col Dent and the president would have disobeyed the judge's order and that, in fact, what Capt Applegate observed was the one and only discussion between Lt Col Dent and the president. Further, while such a conversation during the trial might have been ill-advised from a perception standpoint, we find nothing improper about it. The defense had ample opportunity to pursue this matter at trial but failed to do so other than making it a matter of record.

In our original opinion, we also expressed concern about certain language Lt Col Dent had used in his denial of appellant's request for a verbatim transcript of the Article 32, UCMJ, 10 U.S.C. § 832, pretrial investigation. At the time of the Article 32 hearing, Capt N was one of appellant's defense counsel. Appellant released him from the case prior to trial. In his request for a verbatim transcript, Capt N had stated that, without a verbatim record, appellant would be denied "effective assistance of counsel" in cross-examination of the alleged victim. Lt Col Dent's denial of Capt N's request included a comment that competency of defense counsel was beyond his control and that if Capt N had concerns about his competence, he should address the matter with his Chief Circuit Defense Counsel.

Lt Col Dent explained, during the *DuBay* hearing, that he had become frustrated with Capt N's tactics in not only appellant's case but in earlier cases. When Capt N made a last minute request for a verbatim transcript, Lt Col Dent apparently vented some of his frustration by making the remarks in question. He admitted, in retrospect, they were unnecessary. We caution all those involved in the military justice process to avoid comments in official case-related correspondence which could be misinterpreted. However, based on the facts now before us, we find that, while Lt Col Dent's comments were ill-

advised, they did not evidence any bias towards appellant.

We agree with the military judge that appellant failed to meet even the first prong of the three-prong test in *Newbold.* Based on the military judge's fact findings, in which we concur, insufficient facts have been established to constitute unlawful command influence. Before having the benefit of the post-trial hearing, the facts alleged were sufficient to require further inquiry. However, the facts established through the *DuBay* hearing did not constitute unlawful command influence. Even if the facts demonstrated unlawful command influence, we find no evidence that the proceedings were unfair. On the most significant disputed issue, we find that, regardless of which version of the conversation between MSgt Becker and Lt Col Dent is believed, MSgt Becker, nonetheless, testified effectively for appellant following that conversation. We reiterate that we agree with the military judge that Lt Col Dent's version of those events was more credible. Because we have found no unfairness in appellant's trial, we need not address the third prong of the test.

### FACTUAL SUFFICIENCY

■ At the time of our original consideration of appellant's case, we declined to address the issue of factual sufficiency because of the possibility that a finding of command influence at the *DuBay* hearing might have mooted the issue. However, we do not consider the record of that post-trial hearing in addressing the factual sufficiency issue. Article 66(c), UCMJ. After reviewing the evidence of record from the original trial and making allowances for not having personally observed the witness, we must be convinced of appellant's guilt beyond a reasonable doubt. *United States v. Turner,* 25 M.J. 324, 325 (C.M.A.1987).

Appellant's trial was closely contested and boiled down to whether the members believed appellant's or the victim's version of the facts. Appellant admitted much of the underlying sexual conduct but claimed it was consensual. He denied he had sexual intercourse with the victim but, when pressed on cross-examination, said it was possible that

he had penetrated the victim during their sexual encounter, but he really didn't think he had done so. The victim claimed to be intoxicated and asleep. She said she awakened to find appellant kneeling over her with his penis exposed and that when he saw she was awake immediately got up and left the room. While she could not state for certain that appellant had sexual intercourse with her, she was convinced that someone had done so while she was asleep. Appellant's roommate testified that he came into the room on three occasions and saw appellant and the victim awake and on the bed together. When he spoke to them, the victim responded and never complained that anything was wrong. However, this did not preclude the possibility that appellant had sexual intercourse with the victim at a later time when she was asleep and without her consent.

Additionally, DNA evidence established that appellant's sperm was found inside of the victim's vaginal cavity, and expert medical testimony indicated it could only have reached the cervix of the victim through sexual penetration of the vagina by the penis. Possible problems with cross-contamination of the swabs taken from the victim went only to the weight of the evidence and was properly before the members for consideration. The court also considered evidence on the truthfulness of both appellant and the victim and, admittedly, the only negative evidence adduced for either dealt with the victim.

However, appellant had made inconsistent statements to the authorities during the investigation, and his denial that he knowingly had sexual intercourse with the victim is contradicted by the DNA evidence.

The members were clearly in the best position to determine credibility issues and chose to believe the victim's version of events. Their decision is worthy of due deference. Article 66(c), UCMJ; *United States v. Van Steenwyk*, 21 M.J. 795, 812 (N.M.C.M.R.1985) (citing *United States v. Doctor*, 21 C.M.R. 252, 263, 1956 WL 4578 (C.M.A.1956)). Having painstakingly reviewed all the facts, we also find that the evidence established beyond a reasonable doubt that appellant committed all the offenses of which he stands convicted. Article 66(c), UCMJ.

The approved findings of guilty and the sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Senior Judge PEARSON and Judge SPISAK concur.